Harry HOLMES II, Individually and as Independent Executor of the Estate of Thomas J. Holmes, Deceased, and as Trustee of any Trust Named as a Legatee in the Will of Thomas J. Holmes, Sr., Deceased, Appellant

v.

Douglas G. BEATTY, Individually and as Independent Executor of the Estate of Kathryn V. Holmes, Deceased, Appellee.

No. 14–05–00474–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 14, 2007.

## OPINION

CHARLES W. SEYMORE, Justice.

In this appeal, and in companion case number 14–03–00663–CV, we must address several issues of first impression and determine whether Thomas J. Holmes, Sr. and Kathryn V. Holmes, a husband and wife, both deceased, owned certain brokerage accounts and securities held in certificate form with a right of survivorship. In this case, appellant, Harry Holmes, II, Individually and as Independent Executor of the Estate of Thomas J. Holmes, Deceased, and As Trustee of Any Trust Named as a Legatee in the Will of Thomas J, Holmes, Sr., Deceased ("Holmes"), and appellee, Douglas G. Beatty, Individually and as Independent Executor of the Estate of Kathryn V. Holmes, Deceased ("Beatty"), filed cross-motions for summary judgment. On appeal, Holmes challenges the trial court's order denying his motion for partial summary judgment and granting Beatty's motion for partial summary judgment, thereby ruling the spouses did not own with a right of survivorship a First Southwest Company account, a Raymond James & Associates, Inc. account, and certain securities in certificate form. We reverse and render with respect to the Raymond James & Associates, Inc. account. We affirm the remainder of the order.

## I. BACKGROUND

Thomas and Kathryn Holmes were married in 1972. Kathryn died on July 22, 1999. Beatty, Kathryn's son from a previous marriage, was appointed independent executor of her estate. Thomas died on May 4, 2000, about nine months after Kathryn's death. Holmes, Thomas's son from a previous marriage, was appointed independent executor of his estate. During the marriage, Kathryn and Thomas placed a significant amount of their com-

Jack W. Lawter, Jr., Dianne Whitehorn Lawter, Jennifer Bruch Hogan, Richard P. Hogan, Houston, TX, for appellants.

Joseph S. Horrigan, Linda C. Goehrs, Noel Lane Stout, Rudolph Michael Culp, Houston, TX, for appellees.

Panel consists of Justices HUDSON, FOWLER, and SEYMORE.

munity property into brokerage accounts.[1] When Kathryn died, some brokerage accounts were in existence and held securities. Kathryn and Thomas also held some securities in certificate form that had been issued out of brokerage accounts. The property that is the subject of these appeals has a multi-million dollar value.

Beatty sued Holmes, seeking a declaratory judgment that certain accounts and securities in certificate form were not owned by Kathryn and Thomas with a right of survivorship, and thus did not pass to Thomas upon Kathryn's death. Instead, Beatty claimed that Kathryn's one-half interest in this community property became an asset of her estate upon her death. Holmes filed a counterclaim, alleging the property was owned by Kathryn and Thomas with a right of survivorship. Therefore, Holmes sought an adjudication that the accounts and securities became the sole property of Thomas upon Kathryn's death and subsequently became assets of Thomas's estate upon his death.

Pertinent to this appeal, Beatty filed an "Amended Motion for Partial Summary Judgment." Holmes filed a "Motion for Partial Summary Judgment" followed by a "Supplemental Motion for Partial Summary Judgment."[2]

On March 18, 2005, the trial court signed an "Amended Order on [Beatty's] Amended Motion for Partial Summary Judgment and [Holmes's] Motion for Partial Summary Judgment and Supplemental Motion for Partial Summary Judgment." The trial court granted summary judgment in favor of Beatty and denied summary judgment in favor of Holmes as to certain property. Relative to this appeal, the trial court ruled that the following property did not pass to Thomas by right of survivorship at Kathryn's death:

- a First Southwest Company brokerage account;

- a Raymond James & Associates, Inc. brokerage account; and

- Nine securities that had been issued out of a Dain Rauscher Securities account, a Kemper Securities, Inc. account, or the First Southwest account, and were held by Kathryn and Thomas in certificate form.[3]

Further, the trial court stated the order did not dispose of claims pertaining to the

---

1. Holmes agrees the assets were community property only for purposes of the cross-motions for summary judgment and this appeal. He has reserved his right to claim the assets were Thomas's separate property or to assert a claim for contribution if it is determined some or all of the property did not pass to Thomas by right of survivorship when Kathryn died.

2. Holmes had previously filed a different motion for partial summary judgment. On March 11, 2003, the trial court signed a "Summary Judgment" granting Holmes's motion in part and ordering that certain accounts and securities passed to Thomas by right of survivorship at Kathryn's death. The trial court severed that order from the remainder of the case. Beatty challenges that order in the companion appeal. On March 11, 2003, the trial court also signed a separate

"Order on Partial Summary Judgment" denying Holmes's motion in part as to other accounts and securities. Subsequently, Beatty and Holmes each filed the motions for summary judgment that are the subject of this appeal to address these other accounts and securities, as well as additional assets.

3. In the order that is the subject of the companion appeal, the trial court granted summary judgment in favor of Holmes with respect to the Dain Rauscher and Kemper accounts, thereby ruling they passed to Thomas by right of survivorship at Kathryn's death. This appeal involves only the trial court's ruling that certain securities which had been issued out of the Dain Rauscher and Kemper accounts in certificate form did not pass to Thomas by right of survivorship at Kathryn's death.

separate or community character of the property or any other allegations concerning the assets. Thus, the trial court ruled only on the dispute regarding whether the assets were held with a right of survivorship, leaving all other issues for later resolution. This order was rendered final and appealable after the trial court severed it from the remainder of the case. Holmes appeals from this order.[4]

## II. THE ISSUES AND OUR REVIEW

Although their grounds were numbered differently, Beatty and Holmes raised the same issues in their respective motions for summary judgment: (1) whether the account agreements for the brokerage accounts were sufficient to create a right of survivorship under applicable provisions of the Texas Probate Code; and (2) whether the securities in certificate form were held by Kathryn and Thomas with a right of survivorship under the Probate Code. Holmes also raised an additional ground, contending alternatively that the Raymond James account was governed by Florida law, and the account agreement was sufficient to create a right of survivorship under Florida law.

On appeal, Holmes presents four issues challenging the trial court's partial summary judgment order. In his first, second, and fourth issues, he contends: (1) the First Southwest and Raymond James account agreements were sufficient to create a right of survivorship in these accounts under the Texas Probate Code; and (2) the securities which had been issued out of the Dain Rauscher, Kemper, and First Southwest accounts in certificate form were held by Kathryn and Thomas with a right of survivorship because the account agreements created a right of survivorship and continued to govern the character of the securities after they were issued out of the accounts.[5] Alternatively, Holmes asserts there is a genuine issue of material fact on whether the accounts and securities in certificate form were held with a right of survivorship. As another alternative, in his third issue, Holmes urges application of Florida law.

Under well-established standards governing a traditional motion for summary judgment, the movant must show there is no genuine issue of material fact and he is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). We review a summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex.2005). We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.* When, as in this case, both parties move for summary judgment on the same issues and the trial court

---

4. The trial court also granted summary judgment in Beatty's favor as to the following assets, but Holmes does not appeal this ruling: (1) several additional securities held in certificate form; (2) a Principal/Eppler, Guerin & Turner, Inc. account; and (3) a Lovett, Underwood, Neuhaus, & Webb, Inc. account. Further, the trial court denied Beatty's motion for summary judgment and granted summary judgment in Holmes's favor as to a few other securities held in certificate form. Beatty does not appeal that ruling.

5. In his first stated issue, Holmes generally contends the trial court erred by granting Beatty's motion for summary judgment. In his second stated issue, Holmes generally contends the trial court erred by denying Holmes's motion for summary judgment. In his fourth issue, Holmes urges application of specific provisions of the Texas Probate Code governing a right of survivorship in community property. When read together, the essence of these issues is that the brokerage accounts and securities in certificate form were owned with a right of survivorship pursuant to the applicable Probate Code provisions.

grants one motion and denies the other, we review the summary judgment evidence presented by both parties, determine all questions presented, and render the judgment the trial court should have rendered. *Id.*

## III. APPLICABLE PROBATE CODE PROVISIONS

Chapter XI of the Texas Probate Code governs non-testamentary transfers of property. *See* TEX. PROB.CODE ANN. §§ 436–462 (Vernon 2003 & Vernon Supp. 2006). Chapter XI is divided into three parts. *See id.* Part 1 addresses "Multiple–Party Accounts" in general. *See* TEX. PROB.CODE ANN. §§ 436–449. Part 2 concerns "Provisions Relating to Effect of Death." *See* TEX. PROB.CODE ANN. § 450. Part 3 is entitled "Community Property With Right of Survivorship." *See* TEX. PROB.CODE ANN. §§ 451–462.

As the title indicates, Part 3 includes various provisions governing a right of survivorship in community property. *See id.* In particular, section 451 provides, "[a]t any time, spouses may agree between themselves that all or part of their community property, then existing or to be acquired, becomes the property of the surviving spouse on the death of a spouse." TEX. PROB.CODE ANN. § 451. Section 452, entitled "Formalities," establishes the requirements for an effective agreement between spouses as follows:

> An agreement between spouses creating a right of survivorship in community property must be in writing and signed by both spouses. If an agreement in writing is signed by both spouses, the agreement shall be sufficient to create a right of survivorship in the community property described in the agreement if it includes any of the following phrases:
> (1) "with right of survivorship";
> (2) "will become the property of the survivor";
> (3) "will vest in and belong to the surviving spouse"; or
> (4) "shall pass to the surviving spouse."
> An agreement that otherwise meets the requirements of this part, however, shall be effective without including any of those phrases.

TEX. PROB.CODE ANN. § 452.

The party claiming spouses created a right of survivorship under Part 3 bears the burden to prove an agreement complying with section 452. *See* TEX. PROB.CODE ANN. § 456(a), (b)(3) (providing applicant for adjudication an agreement effectively created right of survivorship under Part 3 must prove to the satisfaction of the court that, inter alia, agreement was executed with the formalities required by law); *see also Pressler v. Lytle State Bank*, 982 S.W.2d 561, 564 (Tex.App.-San Antonio 1998, no writ) (recognizing party claiming to own joint account by right of survivorship under section 439 of Part 1, governing multi-party accounts in general, bears burden to prove the claim).

In this appeal, the parties agree that Part 3 is the controlling portion of Probate Code Chapter XI and specifically, Kathryn and Thomas were required to comply with section 452 to create a right of survivorship in the community property at issue.

## IV. THE FIRST SOUTHWEST ACCOUNT

We will first address the parties' dispute on whether Kathryn and Thomas created a right of survivorship in the First Southwest account under section 452.[6] To open

---

**6.** We are presented with overlapping, as well as unique, issues concerning the First Southwest and Raymond James accounts, and the

the First Southwest account, Kathryn and Thomas both signed a "New Account Agreement" dated September 15, 1997. This document appears to be a pre-printed form provided by First Southwest with information then recorded particular to Kathryn's and Thomas's account. The "Account Name" at the outset of the agreement is "Thomas J. Holmes Kathryn V. Holmes JT TEN." Above the spouses' signatures is the following statement:

> By signing below, the undersigned agrees to all terms of the customer agreement printed on this side and the reverse side of this document. The undersigned acknowledges receipt of a copy of this agreement and the information brochure prepared by First Southwest Company. The undersigned certifies that the undersigned has read and understands all provisions of this agreement. . . .

(original in all capitals). Following the spouses' signatures are various provisions comprising the customer agreement.

The copy of the account agreement in our record is quite difficult to read. However, it appears, and the parties apparently do not dispute, that the account agreement does not include any of the phrases listed in section 452 as sufficient to create a right of survivorship, specifically express the account is held with a right of survivorship, or otherwise state the intended disposition of the account upon the death of one spouse. The only term purportedly used to designate the character of the account is the acronym "JT TEN" next to Kathryn's and Thomas's names in the account title. However, "JT TEN" is not defined in the account agreement. Moreover, there is no summary judgment evidence showing "JT TEN" was defined in any document incorporated into the account agreement or that Kathryn and Thomas were otherwise provided the definition when they opened the account. The "information brochure" referenced in the above-cited provision is not part of the summary judgment evidence.[7]

Nevertheless, Holmes contends the account agreement "otherwise" met the requirements of Part 3 and thus was effective as a survivorship agreement pursuant to section 452. *See* Tex. Prob.Code Ann. § 452. Holmes asserts his summary judgment evidence established that "JT TEN" is commonly recognized in the securities industry and by First Southwest to mean "joint tenancy with right of survivorship."

In contrast, Beatty contends the First Southwest account agreement failed to satisfy section 452 for several reasons: the account agreement did not constitute an agreement between Kathryn and Thomas; "JT TEN," without more, was insufficient survivorship language under section 452; and extrinsic evidence regarding the common meaning of "JT TEN" cannot be used to prove the account agreement created a right of survivorship.

For the reasons explained below, we conclude as follows: (A) a survivorship provision, if any, in the First Southwest account agreement can constitute an

---

agreements differ materially, so we will discuss the accounts separately.

7. Initially, we must note that, in his brief, Holmes states Kathryn and Thomas chose to create accounts with a right of survivorship "when provided definition of their ownership rights as being those of joint tenants with rights of survivorship, not tenants in common." To the contrary, Holmes cites no summary judgment evidence showing the spouses were provided the definition of "JT TEN" when they opened the First Southwest account—whether in any document comprising the account agreement or otherwise. Instead, Holmes cites evidence allegedly establishing the common meaning of this acronym in the securities industry and by First Southwest.

agreement between Kathryn and Thomas; (B) however, the acronym "JT TEN" as used in the First Southwest account agreement was insufficient, without more, to create a right of survivorship; (C) Holmes's proffered extrinsic evidence regarding the meaning purportedly assigned to "JT TEN" in the securities industry and by First Southwest cannot be used to prove the account agreement created a right of survivorship; and (D) accordingly, Kathryn and Thomas failed to create a right of survivorship in the First Southwest account under section 452.[8]

## A. A Survivorship Provision, If Any, In The First Southwest Account Agreement Can Constitute An Agreement Between Kathryn And Thomas

First, Beatty argues the First Southwest account agreement was merely an agreement between the spouses as one party and the brokerage firm as the other party—not an agreement "between" Kathryn and Thomas as required by section 452. *See* TEX. PROB.CODE ANN. § 452. We disagree. Beatty cites no authority to support this proposition, and we have found no authority directly addressing this issue. In fact, we have found very little authority addressing section 452, or any provisions comprising Part 3 of Probate Code Chapter XI, although they were enacted in 1989. *See* TEX. PROB.CODE ANN. §§ 451–462.

■ However, in *Haynes v. Stripling*, the court addressed whether the signature cards for two savings accounts constituting community property created effective survivorship agreements pursuant to the 1987

Texas constitutional amendment, which was the precursor to Part 3. *See* 812 S.W.2d 397, 398 (Tex.App.-Eastland 1991, no writ). The signature cards provided by the financial institutions were signed by both spouses and contained the language, "Joint Tenancy With Right of Survivorship." *See id.* The court noted that, based on its effective date, the recently-enacted Part 3 did not apply to the case. *Id.* at 399–400. However, the court found the survivorship agreements were validated by the 1987 amendment to the Texas Constitution which states that "spouses may agree in writing that all or part of their community property becomes the property of the surviving spouse on the death of a spouse." *See id.* at 398–400 (quoting TEX. CONST. art. XVI, § 15) (1987). We recognize that whether the signature cards constituted an agreement *between* the spouses was not a disputed issue in *Haynes*. *See id.* Rather, the court focused on whether the amendment applied retroactively to validate the survivorship provisions. *See id.* Regardless, the court gave no indication that a survivorship provision contained in an account form provided by a financial institution could not constitute an effective survivorship agreement *between* spouses. *See id.*

Moreover, nothing in the subsequently enacted section 452 provides that a survivorship agreement cannot be contained within an account agreement between the spouses and a brokerage firm or other financial institution. *See* TEX. PROB.CODE ANN. § 452. Nevertheless, Beatty asserts the purpose of the First Southwest ac-

---

8. Beatty further contends that, even if extrinsic evidence can be considered in general, the purported meaning of "JT TEN" is not binding on Kathryn and Thomas because they were not involved in the securities industry and there is no evidence they knew the meaning of the acronym; and the extrinsic evidence offered in this case is not probative because the trial court sustained, or should have sustained, Beatty's objections to particular items of evidence. Because we conclude extrinsic evidence may not be considered in general, we need not address these contentions.

count agreement was to mandate how business would be transacted between the brokerage firm and the account holders. He asserts the account agreement identified the parties as the "undersigned," which referred to Kathryn and Thomas collectively, and "you" or "your," which referred to First Southwest. He further asserts the account agreement did not state it was binding between spouses.

We acknowledge that most provisions in the account agreement governed the relationship between the spouses and First Southwest.[9] However, a provision, if any, conveying a right of survivorship would necessarily govern the relationship between the spouses with respect to ownership of the account. Whether the First Southwest account agreement contained a survivorship provision is another question. However, effectively, any survivorship provision was an agreement *between* Kathryn and Thomas encompassed within their larger agreement with First Southwest.

**B. "JT TEN" Was Insufficient, Without More, To Create A Right Of Survivorship In The First Southwest Account**

Next, Beatty's contends that "JT TEN" in the First Southwest account agreement was insufficient, without more, to create a right of survivorship. He suggests an explanation regarding the intended disposition of the property is required to satisfy section 452. We disagree that an explana-

tion is required, but we do agree that "JT TEN" was insufficient, without more, to create a right of survivorship.[10]

The parties do not cite, and we have not found, any cases addressing what language, in addition to the phrases specifically listed, is sufficient to create a right of survivorship under section 452. Beatty contends cases addressing the language required to create a right of survivorship under Probate Code section 439(a) provide guidance. We disagree.

Section 439, entitled "Right of Survivorship," is included in Part 1 of Probate Code Chapter XI, which applies to multiple-party accounts in general. *See* TEX. PROB.CODE ANN. § 439. "The provisions of Part 1 ... apply to multiple-party accounts held by spouses with a right of survivorship to the extent that such provisions are not inconsistent with the provisions of [Part 3]." TEX. PROB.CODE ANN. § 462. Section 439 states in relevant part:

Sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties against the estate of the decedent if, by a written agreement signed by the party who dies, the interest of such deceased party is made to survive to the surviving party or parties. Notwithstanding any other law, an agreement is sufficient to confer an absolute right of survivorship on parties to a joint account under this subsection if the agreement states in substan-

---

9. For instance, the agreement includes a provision that, although difficult to read, apparently mandates arbitration of "any and all controversies, disputes or claims between the undersigned [Kathryn and Thomas] and you [First Southwest] ..."

10. We note that, with respect to the First Southwest account, Holmes does not seem to suggest "JT TEN" was alone sufficient to create a right of survivorship because he relies heavily on his evidence regarding the com-

monly-understood meaning of this acronym. Nonetheless, we will discuss Beatty's contention regarding the language necessary to create a right of survivorship under section 452 because he makes the same argument concerning the Raymond James account. In addition, it is helpful to address the requirements for creating a right of survivorship under 452 at this point to set forth the parameters within which we evaluate the property at issue.

tially the following form: "On the death of one party to a joint account, all sums in the account on the date of the death vest in and belong to the surviving party as his or her separate property and estate." A survivorship agreement will not be inferred from the mere fact that the account is a joint account. . . .

TEX. PROB.CODE ANN. § 439(a).[11]

Like section 452, which prescribes four phrases sufficient to create a right of survivorship in community property, section 439(a) sets forth a statement sufficient to create a right of survivorship in multiple-party accounts. *See id.*; TEX. PROB.CODE ANN. § 452. Further, just as the phrases prescribed in section 452 are not exclusive, an agreement need not contain the language set forth in section 439(a) to create a right of survivorship in multiple-party accounts. *See Stauffer v. Henderson*, 801 S.W.2d 858, 863 n. 5 (Tex.1990); *Ivey v. Steele*, 857 S.W.2d 749, 751 (Tex.App.-Houston [14th Dist.] 1993, no writ). Nevertheless, we have suggested that section 439(a) requires more extensive language than section 452. *See Ivey*, 857 S.W.2d at 751. Particularly, in *Ivey*, we held an agreement which "only indicates that it is a 'Joint Account with Right of Survivor-

ship,' without additional explanatory language" fails to confer a right of survivorship under section 439(a). *Id.*[12] However, our interpretation of section 439(a) in *Ivey* is contrary to the plain language of section 452, providing that an agreement which "includes" the phrase "with right of survivorship" meets its requirements. *See* TEX. PROB.CODE ANN. § 452. Thus, section 452 expressly allows more concise language than section 439(a). *Compare id. with Ivey*, 857 S.W.2d at 751. Consequently, we reject Beatty's assertion that cases applying section 439(a), including *Ivey*, are analogous to this case relative to the language necessary to create a right of survivorship under section 452.

Accordingly, we must determine what language is sufficient under section 452. Although the Legislature suggested four possible phrases that suffice, "[a]n agreement that otherwise meets the requirements of [Part 3]" is effective without including any of those phrases. TEX. PROB. CODE ANN. § 452. The Legislature did not clarify how an agreement "otherwise meets the requirements" of Part 3, considering Part 3 encompasses all provisions concerning a right of survivorship in community property. However, sections 451

---

**11.** The Legislature subsequently enacted section 439A, prescribing form language financial institutions may use to establish various types of accounts, including the following: "MULTIPLE–PARTY ACCOUNT WITH RIGHT OF SURVIVORSHIP. . . . On the death of a party, the party's ownership of the account passes to the surviving parties. Enter the names of the parties: ____." *See* TEX. PROB.CODE ANN. § 439A(a), (b). Section 439A has been construed "as a supplement to section 439(a), adding alternative acceptable forms of survivorship language." *See Allen v. Wachtendorf*, 962 S.W.2d 279, 283 (Tex.App.-Corpus Christi 1998, pet. denied).

**12.** In *Ivey*, we held that the signature cards for two accounts were insufficient to create a right of survivorship under section 439(a)

where boxes were checked for "Joint Accounts—with Survivorship," but the agreements lacked any other designating language. *See* 857 S.W.2d at 750–51. However, we also held the signature cards for several other accounts satisfied section 439(a) where boxes were checked to designate the type of account and further provisions next to the designations explained the survivorship rights. *See id.; see also In re Estate of Graffagnino*, No. 09–00–434 CV, 2002 WL 31126901, *3 (Tex. App.-Beaumont Sept. 26, 2002, pet. denied) (not designated for publication) (citing *Ivey* when holding that, inter alia, account signature card noting "JT/TNTS with rights of survivorship" was insufficient under section 439(a) absent explanation of right of survivorship).

and 452 are both contained in Part 3. Pursuant to section 451, spouses may agree that community property "becomes the property of the surviving spouse on the death of a spouse." TEX. PROB.CODE ANN. § 451. The suggested phrases set forth in section 452 all contain some type of survivorship language. *See* TEX. PROB.CODE ANN. § 452. Therefore, we conclude that an agreement "otherwise meets the requirements" of Part 3 if it sufficiently conveys the spouses' intent to create a right of survivorship.[13]

In this case, mere inclusion of "JT TEN" next to Kathryn's and Thomas's names in the title of First Southwest account agreement did not sufficiently convey intent to create a right of survivorship. As Beatty asserts, parties may own property as joint tenants without being subject to a right of survivorship. Moreover, nothing in the account agreement as a whole indicated these initials meant "joint tenancy with right of survivorship" or otherwise conveyed Kathryn's and Thomas's intent to own this account with a right of survivorship. Therefore, "JT TEN" as used in the First Southwest account agreement was insufficient, without more, to create a right of survivorship in the account.

Accordingly, the dispositive question becomes whether Holmes's proffered evidence regarding the common meaning of "JT TEN" can be used to prove the account agreement created a right of survivorship.

**C. Holmes's Proffered Evidence Regarding The Meaning Purportedly Assigned To "JT TEN" In the Securities Industry And By First Southwest Cannot Be Used To Prove The Account Agreement Created A Right Of Survivorship.**

Beatty argues that Holmes's proffered extrinsic evidence cannot be considered because only the spouses' written agreement is determinative as to their intent to create a right of survivorship. In contrast, Holmes argues the evidence may be considered because (1) Kathryn and Thomas were bound by all customs and usages of the securities industry pursuant to the First Southwest account agreement; and (2) under ordinary contract principles, "trade-usage" evidence is always admissible to explain a contractual term. Holmes contends his uncontroverted summary judgment evidence established that "JT TEN" is recognized as a designation for "joint tenancy with right of survivorship" in the securities industry[14] and by First Southwest.[15] Alternatively, Holmes ar-

---

**13.** Although we have found no cases directly addressing the requisite language to create a right of survivorship under section 452, we note the author of, at least, one practice guide has interpreted section 452 in the same manner: "The agreement needs to contain language sufficient to demonstrate an intent to imbue the property with the survivorship feature." Gerry W. Beyer, 10 Texas Law of Wills, § 60.3, p. 503 (Texas Practice Series, West 2002).

**14.** To prove that "JT TEN" is commonly understood in the securities industry to mean "joint tenancy with right of survivorship," Holmes offered: the affidavit of Eric Anderson, an attorney who served as counsel

for the sale of some of Kathryn's and Thomas's bonds; the Securities Transfer Association Rule Book (2001); and the affidavit of an expert, Warren Edmundson, containing his opinions based on his experience, interviews with brokers, review of documents from the brokerage firms at issue, Eric Anderson's affidavit, the Securities Transfer Association Rule Book (2001), The Securities Handbook–Comprehensive Reference Guide for the Securities Industry (1986), and Barron's Dictionary of Finance and Investment Terms (1998).

**15.** To prove First Southwest uses "JT TEN" to mean "joint tenancy with right of survivorship," Holmes cites a letter from Scott Fertig, a vice-president of First Southwest, to

gues this evidence raised, at least, a genuine issue of material fact on whether the account was owned with a right of survivorship.

We conclude that Holmes's proffered evidence regarding the common meaning of "JT TEN" cannot be considered when determining whether the account agreement created a right of survivorship for the following reasons: (1) Part 3 indicates extrinsic evidence may not be used to prove spouses' intent to create a right of survivorship in community property; and (2) Kathryn and Thomas were not bound by all customs and usages in the securities industry pursuant to the First Southwest account agreement relative to creation of a right of survivorship; and (3) the rule precluding consideration of extrinsic evidence in general applies equally to trade-usage evidence.

**1. Part 3 indicates extrinsic evidence may not be used to prove intent to create a right of survivorship in community property.**

■ The provisions comprising Part 3 indicate extrinsic evidence may not be used to prove intent to create a right of survivorship in community property. Sec-

tions 451 and 452 clearly require that spouses agree in writing to create a right of survivorship in community property. *See* TEX. PROB.CODE ANN. §§ 451, 452. Moreover, section 452 mandates that the *agreement* include one of the listed phrases or otherwise meet the requirements of Part 3. *See* TEX. PROB.CODE ANN. § 452. In addition, Part 3 includes the following provision:

> "Transfers at death resulting from agreements made in accordance with [Part 3] of this code are effective *by reason of the agreement involved* and are not testamentary transfers. Such transfers are not subject to the provisions of this code applicable to testamentary transfers except as expressly provided otherwise in this code."

TEX. PROB.CODE ANN. § 454 (emphasis added). Consequently, these provisions of Part 3 indicate the Legislature contemplated that spouses express their intent to create a right of survivorship within the written instrument before community property may pass by right of survivorship outside the testamentary provisions of the Probate Code.[16]

---

Holmes, written after Kathryn's and Thomas's deaths. Fertig explains that First Southwest Company follows standard industry language, per The Securities Handbook—Comprehensive Guide for the Securities Industry, on its new account designations including "JOINT TENANTS WITH RIGHT OF SURVIVORSHIP—JTTEN."

16. We note that, before 1987, it was unconstitutional for spouses to own community property with a right of survivorship. *See Haas v. Voigt*, 940 S.W.2d 198, 201 (Tex.App.-San Antonio 1996, writ denied) (explaining "long and troubled history in Texas" of joint accounts with rights of survivorship involving community property). Instead, to create a right of survivorship in community property by agreement, the property had to first be partitioned into separate property. *See ·id.*

In response, article XVI, section 15 of the Texas Constitution was amended in 1987 to expressly provide that "spouses may agree in writing that all or part of their community property becomes the property of the surviving spouse on the death of a spouse." *See id.* (quoting TEX. CONST. art. XVI, § 15). Thereafter, in 1989, the Legislature amended section 46 of the Probate Code, which generally addresses joint tenancies, to provide that "[a]greements between spouses regarding rights of survivorship in community property are governed by Part 3 . . . ." *See id.* at 201–02 (quoting TEX. PROB.CODE ANN. § 46(b)). Thus, Part 3 came into being. *See id.* at 202 (citing TEX. PROB.CODE ANN. §§ 451–62). Therefore, the history behind enactment of Part 3 demonstrates that a right of survivorship in community property is the exception—not the rule. And, spouses must comply with the

In addition, Part 3 prescribes applicable procedures when, a surviving spouse, or the representative of a surviving spouse, requests a court order stating that an agreement satisfies the requirements of Part 3 and is effective to create a right of survivorship in community property. *See* TEX. PROB.CODE ANN. § 456(a). The applicant must prove to the satisfaction of the court that, inter alia, the agreement was executed with the formalities required by law. *See id.* § 456(b). Section 456(c), entitled "Method of Proof," sets forth procedures only for proving the signatures of the deceased spouse and the surviving spouse. *See id.* § 456(c). Significantly, there is no procedure outlined in section 456 for proving an agreement satisfies the formalities of Part 3 through extrinsic evidence. *See generally id.* § 456. To the contrary, section 456 mentions only the filing of the agreement with an application for an adjudication that the *agreement* satisfies the requirements of Part 3. *See id.* § 456(b).

Furthermore, in the absence of any authority addressing this issue relative to section 452, Beatty again cites for analogy cases addressing section 439(a). In *Stauffer*, the Texas Supreme Court held that section 439(a) makes a written instrument determinative of a right of survivorship in a joint account. 801 S.W.2d at 863. Accordingly, extrinsic evidence is not allowed to create a right of survivorship under section 439(a) that is not established by a written agreement signed by the deceased joint account party. *Id.* at 865. Subsequently, courts have repeatedly cited *Stauffer* as prohibiting extrinsic evidence to prove intent to create a right of survivorship under section 439(a).[17]

In this instance, we agree with Beatty that cases addressing admissibility of extrinsic evidence to prove intent to create a right of survivorship under section 439(a) are applicable to an agreement governed by section 452. As we have discussed, sections 439(a) and 452 differ as to the language required to create a right of survivorship. *Compare Ivey*, 857 S.W.2d at 751 *with* TEX. PROB.CODE ANN. § 452. Further, section 439(a) requires only the signature of the decedent whereas section 452 requires the signatures of both spouses. *Compare* TEX. PROB.CODE ANN. § 439 *with* § 452. However, sections 439(a) and 452 are identical with respect to emphatically requiring an agreement in writing to create a right of survivorship. *See* TEX. PROB. CODE ANN. §§ 439, 452. In addition, like Part 3, Part 1 (which includes section 439) provides that transfers of property pursuant to section 439 "are effective by reason of the account contracts involved" and are not subject to testamentary provisions of the Probate Code. *See* TEX. PROB.CODE

requirements of Part 3 before community property may pass by right of survivorship outside the testamentary provisions of the Probate Code.

17. *See, e.g., In re Estate of Dellinger*, 224 S.W.3d 434, 438 (Tex.App.-Dallas 2007, no pet.); *In re Estate of Wilson*, 213 S.W.3d 491, 493–94 (Tex.App.-Tyler 2006, pet. filed); *In re Dillard*, 98 S.W.3d 386, 396, 397 n. 5 (Tex. App.-Amarillo 2003, pet. denied); *Allen*, 962 S.W.2d at 282; *Evans v. First Nat'l Bank of Bellville*, 946 S.W.2d 367, 374 (Tex.App.-Houston [14th Dist.] 1997, writ denied); *Banks v. Browning*, 873 S.W.2d 763, 764–65

(Tex.App.-Fort Worth 1994, writ denied); *McNeme v. Estate of Hart*, 860 S.W.2d 536, 538 (Tex.App.-El Paso 1993, no writ); *Shaw v. Shaw*, 835 S.W.2d 232, 234–35 (Tex.App.-Waco 1992, writ denied); *Kitchen v. Sawyer*, 814 S.W.2d 798, 801 (Tex.App.-Dallas 1991, writ denied); *but see A.G. Edwards & Sons, Inc. v. Beyer*, 170 S.W.3d 684, 690–94 (Tex. App.-El Paso 2005, pet. granted) (permitting extrinsic evidence of joint account holders' intent to create right of survivorship for limited purpose of determining whether broker was liable to survivor for failing to set up account as requested after written agreement went missing).

ANN. § 441. The *Stauffer* court cited section 441, among other portions of Part 1, when reasoning the written agreement is determinative of intent to create right of survivorship in a joint account. *See* 801 S.W.2d at 863. Consequently, we see no reason the rule precluding consideration of extrinsic evidence under section 439(a) should not apply to an agreement governed by section 452.[18]

However, our inquiry does not end here because Holmes contends his proffered evidence regarding the meaning of "JT TEN" may, nonetheless, be considered pursuant to the First Southwest account agreement and ordinary contract principles.

**2. Kathryn and Thomas were not bound by all customs and usages in the securities industry pursuant to the First Southwest account agreement relative to creation of a right of survivorship.**

■ Holmes contends that he may rely on his "trade-usage" evidence pursuant to the following provision in the First Southwest account agreement:

> *Applicable Rules and Regulations:* All transactions shall be subject to the constitution, rules, regulations, customs and usages of the exchange or market and its clearinghouse, if any, upon which such transactions are executed, except as otherwise specifically provided in this agreement.

According to Holmes, this provision signifies Kathryn's and Thomas's agreement to be bound by all customs and usages of the securities industry, including the customary meaning of "JT TEN" as "joint tenancy with right of survivorship." We disagree. As Beatty urges, we construe this provision as applying to transactions by which First Southwest conducted activities within the spouses' account and thus governing the relationship between the spouses and First Southwest. This provision did not establish that all customs and usages in the securities industry governed ownership of the account as between the spouses.[19] Regardless, relying on this provision, as urged by Holmes, would still require consideration of extrinsic evidence regarding the meaning of "JT TEN" and thus, involve looking outside the written instrument to determine intent to create a right of survivorship, contrary to the requirements of Part 3.

---

18. Holmes contends section 439 applies only to cash accounts—not brokerage accounts—while section 452 applies to all types of community property. Because we are applying section 452, we need not address this contention. Nevertheless, even if section 439 applies only to cash accounts, we find no reason cases considering admissibility of extrinsic evidence under section 439(a) cannot provide guidance when addressing the same issue with respect to community property in general under section 452. We also note section 439(a) provides that "A survivorship agreement will not be inferred from the mere fact that the account is a joint account," whereas section 452 contains no similar statement relative to ownership of community property. *See* TEX. PROB.CODE ANN. §§ 439, 452. However, the Legislature included the quoted phrase to effectively revoke previous decisions from many Texas courts recognizing a rebuttable presumption of a right of survivorship in a joint account by requiring a written agreement complying with section 439. *See Stauffer v. Henderson,* 746 S.W.2d 533, 534–36 (Tex.App.-Amarillo 1988), *aff'd,* 801 S.W.2d 858 (Tex.1990). Accordingly, this distinction between section 439(a) and section 452 does not affect our conclusion that cases interpreting section 439(a) are analogous.

19. As we have discussed, we reject Beatty's contention that the spouses were required to execute a separate survivorship agreement between themselves. Rather, their survivorship agreement could be included within their larger account agreement with the brokerage firm. However, that conclusion does not mean that every agreement between the spouses and the brokerage firms also governed the relationship between the spouses.

**3. The rule precluding extrinsic evidence in general to prove intent to create a right of survivorship applies equally to trade-usage evidence.**

■ Holmes also contends his "trade-usage" evidence may be considered under general contract principles. Ordinarily, only when a contract is first determined to be ambiguous, may a court consider the parties' interpretation and admit extraneous evidence to determine the true meaning of the instrument. *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex.1995); *Mescalero Energy, Inc. v. Underwriters Indem. Gen. Agency, Inc.*, 56 S.W.3d 313, 320 (Tex.App.-Houston [1st Dist.] 2001, pet. denied). Nonetheless, extrinsic evidence may be admissible "to give the words of a contract a meaning consistent with that to which they are reasonably susceptible, *i.e.*, to 'interpret' contractual terms." *Nat'l Union*, 907 S.W.2d at 521; *Mescalero*, 56 S.W.3d at 320. For instance, "trade-usage" evidence regarding the commonly-understood meaning of a term in a specialized industry may be admissible to explain, supplement, or qualify the terms of an agreement, but may not be used to contradict an express term. *See* Tex. Bus. & Com.Code Ann. § 1.303(d) (Vernon Supp.2006); *Mescalero*, 56 S.W.3d at 320; *Transcontinental Gas Pipeline Corp. v. Texaco, Inc.*, 35 S.W.3d 658, 670 (Tex.App.-Houston [1st Dist.] 2000, pet. denied) (citing former version of Business and Commerce Code section 1.303(d)); *see Nat'l Union*, 907 S.W.2d at 521.

Citing these principles, Holmes asserts trade-usage evidence is always admissible to explain a contractual term, despite the general rule prohibiting consideration of extrinsic evidence. Holmes asserts the *Stauffer* court suggested ordinary contract principles apply when determining whether parties created a right of survivorship under section 439(a). In particular, when discussing that extrinsic evidence is generally inadmissible, the court interjected: "If [the written agreement] is complete and unambiguous, then parol evidence is inadmissible, *as with written agreements generally*, to vary, add to or contradict its terms." *Stauffer*, 801 S.W.2d at 863 (emphasis added). We acknowledge this statement could be read as an implication that ordinary contract principles apply when deciding whether parties created a right of survivorship. Further, we recognize Holmes introduces evidence to explain the meaning of an acronym actually contained in the spouses' account agreement, as opposed to evidence of their general intent.

However, we conclude that the rule precluding consideration of extrinsic evidence in general applies equally to trade-usage evidence for two reasons: (a) ordinary contract principles allowing consideration of extrinsic evidence in some circumstances are inapplicable when determining intent to create a right of survivorship; and (b) the rationale for precluding extrinsic evidence in general to prove intent to create a right of survivorship applies to trade-usage evidence.

**a. Ordinary contract principles allowing consideration of extrinsic evidence in some circumstances are inapplicable when determining intent to create a right of survivorship.**

Several courts applying *Stauffer*, including this court, have seemingly held that ordinary exceptions to the parol evidence rule are not applicable when determining intent to create a right of survivorship under section 439(a). For instance, in *Evans v. First Nat'l Bank of Bellville*, a "Time Deposit Agreement and Signature Card" clearly provided for a joint tenancy with right of survivorship between two signatories to a bank "account." 946

S.W.2d 367, 370, 374 (Tex.App.-Houston [14th Dist.] 1997, writ denied). However, we found the agreement was ambiguous because it was unclear which of three CDs constituted the "account" covered by the agreement. *See id.* at 374–75. We were constrained to follow the *Stauffer* mandate that extrinsic evidence may not be utilized to prove intent of the parties with respect to creation of a joint tenancy with right of survivorship. *Id.* at 375.

However, we recognized the *Stauffer* court did not address the reciprocal question of whether extrinsic evidence may be introduced when the joint account agreement is ambiguous. *Id.* Significantly, we stated,

> ... based upon the careful wording of the *Stauffer* opinion ... agreements relating to joint accounts are to be interpreted according to contract rules generally. Where no ambiguity exists, parol evidence is improper. Extrinsic evidence is permissible, however, to explain an ambiguity where the signature card or other agreement is unclear as to some aspect of the parties' agreement, *other than their intent to create a survivorship account* ... Our holding in this case is limited to circumstances such as these where a party has expressed a clear intent to create a survivorship account, but additional evidence is required to determine what funds are properly subject to the survivorship agreement.

*Id.* (emphasis added). Therefore, we held that extrinsic evidence was admissible because the intent to create a right of survivorship was adequately expressed in the account agreement, but it was unclear which CDs were subject to this survivorship agreement. *See id.* However, we made clear that the ordinary contract principle allowing admission of extrinsic evidence when an agreement is ambiguous is *not* applicable when determining the parties' intent to create a right of survivorship. *See id.*

Similarly, a sister court has recognized that an agreement "either does or does not" create a right of survivorship under section 439(a) as a matter of law, and contract principles normally allowing extrinsic evidence to shed light on an ambiguity are inapplicable. *See Shaw v. Shaw,* 835 S.W.2d 232, 234 (Tex.App.-Waco 1992, writ denied) (further stating that *Stauffer* interpreted section 439(a) as abrogating all basic contract principles such that only the statute controls interpretation of a survivorship agreement);[20] *In re Dillard,* 98 S.W.3d 386, 396–97 & n. 5 (Tex.App.-Amarillo 2003, pet. denied) (recognizing *Stauffer* precludes extrinsic evidence of intent to create right of survivorship, but did not prohibit extrinsic evidence where agreement contained requisite survivorship language, but was unclear as to which account agreement it applied).[21]

■ Therefore, this court and sister courts have implicitly held that ordinary

---

**20.** In *Evans,* we referenced *Shaw* as a "but see" citation, thus indicating the *Shaw* court held the opposite of *Evans. See Evans,* 946 S.W.2d at 375. However, both courts concluded extrinsic evidence is inadmissible to manifest *intent* to create a right of survivorship even when the agreement is ambiguous as to that intent. *See id.; Shaw,* 835 S.W.2d at 234–35.

**21.** *See also* Philip M. Green, Note, *Extrinsic Evidence Is Not Admissible to Determine Parties' Intent Regarding Right of Survivorship on Joint Bank Accounts: Stauffer v. Henderson, 801 S.W.2d 858 (Tex.1990),* 22 Tex. Tech L.Rev. 1237, 1251 (1991) (criticizing *Stauffer,* but interpreting decision as holding that extrinsic evidence is inadmissible even when agreement is ambiguous as to the parties' intent to create right of survivorship under section 439(a)).

exceptions to the parol evidence rule, which may allow admission of extrinsic evidence in general contract disputes, are not applicable when determining intent to create a right of survivorship. Accordingly, these decisions support a conclusion that trade-usage evidence may not be used to prove that a term used in an agreement was intended to mean "right of survivorship." [22]

In addition, the nature of a survivorship dispute—under section 439 or section 452—supports this conclusion. When determining whether parties intended to create a right of survivorship, we are not addressing an ordinary contract dispute in the classic sense. Rather, we are addressing a situation in which Texas law dictates parties do not even have a certain type of agreement—a survivorship agreement—unless they have executed a written instrument complying with statutory formalities, including expression of their intent to create a right of survivorship. Therefore, if we must look outside the written instrument to determine that a term used therein means "right of survivorship," the parties have not expressed their intent within the written instrument.

### b. The rationale for precluding extrinsic evidence in general to prove intent to create a right of survivorship applies equally to trade-usage evidence.

■ The rationale for precluding extrinsic evidence in general to prove intent to create a right of survivorship also supports a finding that a party may not rely on trade-usage evidence to prove that a term used in an agreement means "right of survivorship." As courts have recognized with respect to section 439(a):

> [T]he legislature wisely intended to require a specific, definite written agreement before such property would be allowed to pass outside a testamentary instrument, thereby eliminating the increasing and time-consuming burden upon our trial courts of attempting to ascertain a deceased's intent through the uncertain avenue of extrinsic parol evidence.

*Kitchen v. Sawyer*, 814 S.W.2d 798, 801 (Tex.App.-Dallas 1991, writ denied) (quoting *Stauffer v. Henderson*, 746 S.W.2d 533, 536 (Tex.App.-Amarillo 1988), *aff'd*, 801 S.W.2d 858 (Tex.1990)). The same uncertainty would exist if trade-usage evidence were permissible to prove that a term used

---

**22.** We must note that, after *Stauffer*, the Legislature added section 439A to the Probate Code, allowing a financial institution to give a "customer ... adequate disclosure of the ownership rights ... in a universal account form with options listed for selection and additional disclosures provided in the account agreement, or in any other manner which adequately discloses the information provided in this section." *See* Tex. Prob.Code Ann. §§ 439A(c), (d). Therefore, section 439A seems to have slightly modified *Stauffer* by suggesting a court may look to all disclosures provided by the financial institution to the depositors and all documents comprising their account agreement when determining intent to create a right of survivorship. *See id.* However, section 439A apparently did not alter the rule precluding consideration of

extrinsic evidence in general when determining intent to create a right of survivorship. *See In re Estate of Dellinger*, 224 S.W.3d at 438–440 (citing *Stauffer* rule, but also recognizing that, pursuant to section 439A, language establishing right of survivorship may be contained in document incorporated into instrument signed by decedent because agreement must be construed as a whole, when determining whether intent was adequately expressed); *Allen*, 962 S.W.2d at 282–84 (construed same). Moreover, nothing in section 439A suggests a court may consider extrinsic evidence regarding the parties' understanding of terms in their agreement, absent proof the meaning was provided to them when they opened their account. *See* Tex. Prob.Code Ann. § 439A.

in an agreement means "right of survivorship."

We must note that the law seems somewhat unclear on the requirements for proving the meaning of a contractual term through trade-usage evidence. We have held that, to establish custom and usage of trade with respect to a contract, there must be evidence (1) the custom was generally known, or had been established for a sufficient length of time to become generally known, and (2) it was *known* to all parties to the contract or the parties had contracted with reference to it. *See Texas Gas Exploration Corp. v. Broughton Offshore Ltd. II*, 790 S.W.2d 781, 785–86 (Tex. App.-Houston [14th Dist.] 1990, no writ) (citing *Arnold D. Kamen & Co. v. Young*, 466 S.W.2d 381, 386 (Tex.Civ.App.-Dallas 1971, writ ref'd n.r.e.)); *Corso v. Carr*, 634 S.W.2d 804, 808 (Tex.App.-Fort Worth 1982, writ ref'd n.r.e.). However, section 1.303(d) of the Texas Business and Commerce Code imposes a broader standard:

> A course of performance or course of dealing between the parties *or usage of trade in the vocation or trade in which they are engaged or of which they are or should be aware* is relevant in ascertaining the meaning of the parties' agreement, may give particular meaning to specific terms of the agreement, and may supplement or qualify the terms of the agreement. . . .

Tex. Bus. & Com.Code Ann. § 1.303(d). Thus, if the parties to an agreement are not both engaged in the industry at issue,

section 1.303(d) allows custom and usage of trade to prove the meaning of a contractual term if the parties knew or *should have known* of the custom or usage. *See id.*

Regardless of the prevailing standard, it is axiomatic that, when a dispute arises on whether an agreement effectively created a right of survivorship, one joint account holder—and in this case both account holders—will be deceased. *See Kitchen*, 814 S.W.2d at 801. Quite simply, at least one account holder will be unavailable to express his or her understanding regarding the terms used in the agreement. Moreover, as we have discussed, it is the joint account holders' intent that is pertinent when ascertaining creation of a right of survivorship—not the knowledge of the brokerage firm at issue or the securities industry in general. Therefore, if trade-usage evidence were permitted, a fact-finder would attempt to ascertain through the uncertain avenue of parol evidence whether a party, who is now deceased, knew or should have known that a term used in the agreement means "right of survivorship." *See Exxon Corp. v. Pluff*, 94 S.W.3d 22, 30 (Tex.App.-Tyler 2002, pet. denied) (stating that "[c]ustom and usage is a question of fact.").

We conclude the Legislature sought to avoid this type of uncertainty by requiring a written expression of the spouses' intent before community property may pass by right of survivorship outside the testamentary provisions of the Probate Code.[23] Consequently, trade usage-evi-

---

23. In fact, Beatty argues that, even if trade usage evidence were generally permitted, Kathryn and Thomas were not bound by the industry meaning of "JT TEN." Beatty asserts they were not affiliated with the securities industry and there is no evidence they knew the meaning of the acronym. Because we agree that consideration of trade-usage evidence is not permitted, we do not reach Beatty's contention. However, his contention

illustrates the uncertainties that would arise if trade-usage evidence were permitted. In particular, Holmes suggests Kathryn and Thomas were bound by the industry meaning of "JT TEN" based on their extensive investing experience. Arguably, Thomas was engaged in the securities trade because evidence shows his occupation was "investments." However, Kathryn was a housewife although she had an extensive history of investing. Assuming,

dence may not be used to prove that a term contained in an agreement means "right of survivorship" under section 452. Accordingly, Holmes's proffered evidence regarding the meaning of "JT TEN" cannot be considered when determining whether the account agreement created a right of survivorship.

## D. The First Southwest Account Agreement Did Not Create A Right Of Survivorship.

 Finally, Holmes contends there is, at least, a fact issue on whether the First Southwest account agreement created a right of survivorship. Holmes argues Beatty did not meet his burden to show entitlement to summary judgment because he failed to negate Kathryn's and Thomas's intent to create a right of survivorship. Although Beatty bore the burden to prove he was entitled to summary judgment, Holmes would bear the ultimate burden to prove the account was owned by Kathryn and Thomas with a right of survivorship. *See* TEX. PROB.CODE ANN. § 456(a),(b)(3); *see also Pressler,* 982 S.W.2d at 564. In reconciling these standards, Beatty did not have the burden to negate Kathryn's and Thomas's intent to create a right of survivorship. Instead, he bore the burden to show that Holmes will ultimately be unable to prove Kathryn and Thomas intended to create a right of survivorship.

By introducing the account agreement, Beatty met this burden. Because "JT TEN" was insufficient to create a right of survivorship and Holmes's proffered evidence regarding the meaning of the acronym may not be considered, there was no fact issue that could have been raised regarding existence of a survivorship provision. Instead, the First Southwest account agreement failed to create a right of survivorship as a matter of law. Accordingly, the trial court did not err by granting Beatty's motion for summary judgment and denying Holmes's motion for summary judgment with respect to the First Southwest account and ruling the account did not pass by right of survivorship to Thomas upon Kathryn's death.

## V. THE RAYMOND JAMES ACCOUNT

 To open the Raymond James account, Kathryn and Thomas both signed a document entitled "New Account Form" on September 19, 1995. This document also appears to be a pre-printed form provided by Raymond James with information then completed particular to Kathryn's and Thomas's account. Near the top of the form is a section entitled "Account Classification," that sets forth various options with corresponding boxes, allowing a classification to be chosen, as follows:

| | | | |
|---|---|---|---|
| ☐ Individual | ☐ Tenants in Common | ☐ Custodial | ☐ Investment Club |
| ☐ Joint (WROS) | ☐ Corporation | ☐ Estate | ☐ IRA |
| ☐ Joint Tenants by Entirety | ☐ Partnership | ☐ Trust ... | ☐ Other |
| ☐ Joint Community Property | ☐ Proprietorship ... | | |

Only the box corresponding with "Joint (WROS)" is marked on Kathryn's and Thomas's form, reflecting that this classification was chosen for their account. In addition, the "Account Title" on the form is "Thomas J. Holmes & Kathryn V. Holmes JTWROS."

without deciding, that Kathryn's investing experience sufficiently raises a fact issue on whether she knew or should have known the meaning of industry acronyms, a fact-finder would potentially decide intent to create a right of survivorship. We conclude the Legislature did not contemplate that intent to create a right of survivorship be determined based on a fact-finder's decision regarding what a decedent knew or should have known.

Above Kathryn's and Thomas's signatures is the following statement, "By signing below, I acknowledge that I have received, read, understand and agree to abide by all the terms and conditions set forth in the Client Agreement incorporated herein by this reference." The referenced "Client Agreement" consists of several pages of provisions. The "New Account Form" and "Client Agreement" do not include any of the phrases listed in section 452, specifically express that the account is held with a right of survivorship, or otherwise state the intended disposition of the account upon the death of one spouse. The initials "Joint (WROS)" and "JTWROS" are not defined in the "New Account Form" or the incorporated "Client Agreement."

Nonetheless, Holmes contends the Raymond James account agreement "otherwise" met the requirements of Part 3 of Probate Code Chapter XI and thus created a right of survivorship pursuant to section 452. The parties present the same issues concerning this account that we considered relative to the First Southwest account: (1) whether the account agreement between the spouses and Raymond James could constitute an agreement *between* Kathryn and Thomas; (2) whether an explanation regarding disposition of the property was required under section 452; (3) and whether Holmes's summary judgment evidence purportedly demonstrating "JTWROS" is recognized as a designation for "joint tenancy with right of survivorship" in the securities industry [24] and by Raymond James [25] may be considered. Holmes also presents additional arguments particular to the Raymond James account: (1) several courts have effectively defined "JTWROS" to mean "joint tenancy with right of survivorship"; and (2) Beatty admitted in a facsimile sent to the Holmes family assistant after Kathryn's death that

**24.** To establish that "JTWROS" is commonly recognized in the securities industry to mean "joint tenancy with right of survivorship," Holmes again cites the affidavit of his expert, Warren Edmundson, and the materials relied on by Edmundson.

**25.** To demonstrate Raymond James recognized "JT WROS" to mean "joint tenancy with right of survivorship," Holmes cites two documents he obtained from Raymond James by deposition on written questions after this suit was filed. One single-paged document entitled "New Accounts/Special Account Types" lists the meanings of various abbreviations and includes an entry for "JT WROS," explaining, in part: that "The distinguishing feature of joint tenancy is its survivorship feature. Upon the death of each tenant, the property immediately passes to the surviving joint tenants in equal shares. This means the property is not controlled by the terms of a will and will be excluded from the probate estate." The other single-paged, untitled document also outlines the meaning of various abbreviations and explains that "JT/WROS" equals "joint tenants with right of survivorship."

We note that the deposition on written questions included a numbered list of various requested items. Some requested items were documents generally defining or explaining "JT(WROS)" and "JTWROS." One requested item was all brochures that were or should have been provided to Kathryn and Thomas when they opened their account. The portions of Raymond James's response included in the summary judgment record did not indicate that the above-described documents defining "JTWROS" and "JT/WROS" were responsive to any certain numbered requests. Therefore, the evidence did not show that these documents were provided to Kathryn and Thomas when they opened the account.

Holmes also cites an affidavit from an officer of Raymond James, reciting the same definition for "Joint (WROS)" that is included on the "New Accounts/Special Account Types." This affidavit was attached to Holmes's motion to reconsider filed *after* the trial court signed its initial order granting Beatty's motion for summary judgment, but before the trial court signed its amended order.

"JTWROS" in the Raymond James account agreement meant "joint tenancy with right of survivorship."

As discussed, we have rejected Beatty's contention that Kathryn and Thomas could not include their survivorship agreement, if any, within their account agreement with the brokerage firm. We have also rejected Beatty's suggestion that an agreement must contain an explanation regarding disposition of the property to satisfy section 452. However, this time, we conclude that the Raymond James account agreement sufficiently conveyed Kathryn's and Thomas's intent to create a right of survivorship. Therefore, our previous holding that Holmes's proffered extrinsic evidence cannot be considered is immaterial to our conclusion regarding the Raymond James account.[26] In addition, we need not consider whether courts have defined "JTWROS" to mean "joint tenancy with right of survivorship,"[27] and whether Holmes may rely on Beatty's fax to prove a right of survivorship in this account.[28]

We can discern Kathryn's and Thomas's intent to create a right of survivorship in the Raymond James account from the instrument alone. Unlike the First Southwest account, we are not presented with only an acronym next to the spouses' name in the account title. Rather, Kathryn and Thomas affirmatively selected an "Account Classification." They were presented with fourteen options for the account classification and selected "Joint (WROS)" to the exclusion of all other options. Significantly, Kathryn and Thomas rejected "tenancy in common"—the very designation that Beatty attempts to assign to this account. We can conceive of no other meaning Kathryn and Thomas could have contemplated for "Joint (WROS)," considering that none of the other options can possibly be construed as meaning joint tenancy with rights of survivorship. To adopt Beatty's reasoning, we would be forced to believe that a brokerage firm such as Raymond James included numerous options for the account classification on its account form, except joint tenancy with right of survivorship, and Kathryn and Thomas intended to choose some other classification that coincidently is abbreviated as "Joint (WROS)." We cannot agree with such a proposition.

**26.** Beatty again argues Holmes's proffered evidence is not probative because there is no indication Kathryn and Thomas understood "JTWROS" to mean "joint tenancy with right of survivorship," and the trial court sustained or should have sustained Beatty's objection to particular evidence. Because we find the agreement sufficient to convey intent to create a right of survivorship, we need not consider these arguments.

**27.** Beatty asserts that the Texas cases cited by Holmes did not define "JTWROS" to mean "joint tenancy with a right of survivorship." Holmes cites *Evans,* in which we used "JTWROS" as an acronym for joint tenancy with right of survivorship for convenience when discussing an account governed by section 439(a). *See generally* 946 S.W.2d 367. A sister court has referred to an account title containing the abbreviation as a joint tenancy with right of survivorship; however, whether the acronym was sufficient to create a right of survivorship was not the issue in that case. *See A.G. Edwards,* 170 S.W.3d at 687–96. Holmes also cites cases from sister state courts actually recognizing "JTWROS" as the common acronym for "joint tenancy with rights of survivorship." *See In re Estate of Baker,* 760 So.2d 759, 762 (Miss.2000); *In re Marriage of Tullier,* 989 S.W.2d 607, 609 n. 2 (Mo.Ct.App.1999); *In re Estate of Hayes,* 941 S.W.2d 630, 633 (Mo.Ct.App.1997). We need not decide whether use of the initials "JT WROS" or "WROS" would alone be sufficient to create a right of survivorship because the designation "Joint (WROS)," when read in conjunction with the entire Raymond James agreement, sufficiently conveyed Kathryn's and Thomas's intent to create a right of survivorship.

**28.** We will discuss the fax in more detail when we address securities in certificate form because Holmes again cites the fax relative to the individual securities.

We conclude the agreement sufficiently conveyed the spouses' intent to create a right of survivorship in the account pursuant to section 452. Thus, the Raymond James account became the sole property of Thomas upon Kathryn's death by right of survivorship. Accordingly, the trial court erred by granting Beatty's motion for summary judgment and denying Holmes's motion for summary judgment relative to the Raymond James account.[29]

## VI. SECURITIES ISSUED OUT OF THE DAIN RAUSCHER AND KEMPER ACCOUNTS

The parties dispute whether securities which had been issued out of the Dain Rauscher and Kemper accounts in certificate form were owned by Kathryn and Thomas with a right of survivorship.

To open each account, Kathryn and Thomas both signed a written account agreement. In the order that is the subject of the companion appeal, the trial court ruled both accounts were owned with a right of survivorship. This appeal involves seven securities which had been issued out of the Dain Rauscher account in certificate form.[30] and one security which had been issued out of the Kemper account in certificate form.[31] The trial court ruled these securities did not pass to Thomas by right of survivorship at Kathryn's death.

On appeal, Holmes does not argue that the certificates alone were sufficient to create a right of survivorship.[32] Rather, he argues the survivorship provisions in the account agreements continued to govern the character of the securities after they were issued out of the accounts. Therefore, in effect, Holmes argues the account agreements provided the written agreements required by section 452 to create a right of survivorship in the securities. In contrast, Beatty contends that any survivorship agreements governing the brokerage accounts were revoked and/or rendered inapplicable when the securities were removed from the accounts. Consequently, Beatty suggests Holmes cannot point to any written agreement creating a right of survivorship in the securities as required by section 452.[33]

Preliminarily, we must note that, in our companion opinion issued this day, we

29. In light of this conclusion, we need not consider Holmes's third issue, urging the account was owned with right of survivorship under Florida law.

30. These securities are items 1–7 on the list of securities recited in the portion of the underlying order granting summary judgment in favor of Beatty.

31. This security is item 8 on the list of securities recited in the portion of the underlying order granting summary judgment in favor of Beatty.

32. The owners are shown as "Thomas J. Holmes & Kathryn V. Holmes JT TEN" on the face of all these certificates. Although the writing on the back of these certificates is quite difficult to read, it is apparently undisputed that the initials "JT TEN" are not defined on the back of the certificates. Further, the certificates are not signed because owners do not sign stocks or bonds until they are ready to sell or redeem them as signatures would render them negotiable by anyone with possession.

33. Both parties raised another issue in their motions for summary judgment: whether the certificates alone were sufficient to create a right of survivorship, despite the absence of Kathryn's and Thomas's signatures, pursuant to a different provision contained in Probate Code Chapter XI—section 450. *See* TEX. PROB. CODE ANN. § 450. However, on appeal, Holmes does not reurge his section 450 argument, although application of section 450 remains a disputed issue in the companion appeal. In this appeal, Holmes asserts only that the securities in certificate form were held with a right of survivorship under section 452 because the account agreements continued to govern their character even after they were issued out of the accounts. Accordingly, we will address this issue only.

have reversed the trial court's ruling that the Dain Rauscher account was owned with a right of survivorship. *See Beatty v. Holmes,* No. 14–03–00663, 233 S.W.3d 475, 2007 WL 2301357 (Tex.App.-Houston [14th Dist.] August 14, 2007, no pet h.). Nevertheless, for the reasons explained below, we conclude that, even if the Dain Rauscher account was owned with a right of survivorship, any survivorship provision did not continue to govern securities which had been issued out of the account. Therefore, for discussion purposes *only,* we will refer to the Dain Rauscher agreement as if it effectively created a right of survivorship in the account. In the companion appeal, Beatty did not challenge the trial court's ruling that the Kemper account was owned with a right of survivorship. Thus, we will also refer to the Kemper account agreement as if it effectively created a right of survivorship in the account.

We must address yet another issue of first impression because the parties do not cite, and we have not found, any cases which inform or control our disposition. We conclude that (A) any survivorship agreements in the Dain Rauscher and Kemper account agreements did not apply to securities that had been issued out of the accounts; and (B) Holmes's arguments to the contrary are unavailing.

**A. Any Survivorship Agreements In The Account Agreements Did Not Apply To Securities Issued Out Of The Accounts In Certificate Form.**

 Beatty contends that any survivorship provisions in the account agreements did not apply to securities that had been issued out of the accounts in certificate form. We agree.[34]

An agreement complying with section 452 is "sufficient to create a right of survivorship in the community property *described in the agreement* ..." TEX. PROB. CODE ANN. § 452 (emphasis added). Quite simply, when determining whether a survivorship agreement governs certain property, we must review what property was actually "described in the agreement." *See id.* Clearly, ascertaining what property was actually "described in the agreement" is fundamental to determining the scope of the agreement because spouses

---

**34.** Beatty also argues that, pursuant to Probate Code section 455, there was a "revocation" of any survivorship agreements governing the securities when they were issued out of the accounts. Section 455, which prescribes the methods for revocation of a survivorship agreement governing community property, provides in pertinent part: "The agreement may be revoked with respect to specific property subject to the agreement by the disposition of such property by one or both of the spouses if such disposition is not inconsistent with specific terms of the agreement and applicable law." TEX. PROB.CODE ANN. § 455. Citing two dictionary definitions, Beatty contends there was a "disposition" when the certificates were issued because the brokerage firms transferred care or possession of the securities to Kathryn and Thomas. *See* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 335 (10th ed.1993) (defining "disposition" as meaning (1) transfer to the care or possession of another; or (2) the power of such transferral); BLACK'S LAW DICTIONARY 197 (6th ed.1990) (defining "disposition" to mean (1) the act of transferring something to another's care or possession, or (2) the parting with, alienation of, or giving up of property). However, section 455 clearly contemplates revocation of a survivorship agreement if there is a disposition of the property *"by one or both spouses."* *See* TEX. PROB.CODE ANN. § 455 (emphasis added). Kathryn and Thomas never transferred care or possession of the securities to another; rather the securities were transferred *to* Kathryn and Thomas in certificate form. Therefore, Beatty's revocation argument is inapplicable to this situation. Regardless, Beatty need not prove revocation of any survivorship agreements governing the securities if no such agreements existed in the first place. *See id.* (discussing revocation with respect to "specific property subject to the agreement").

may agree that all *or part* of their community property pass to the other spouse by right of survivorship. *See* TEX. PROB.CODE ANN. § 451.

The purported survivorship agreement in the Dain Rauscher account provided:

It is the express intention of the undersigned to create an estate or *account* as joint tenants with rights of survivorship and not as tenants in common. In the event of the death of either of the undersigned, *the entire interest in the joint account shall be vested in the survivor or survivors* on the same terms and conditions as theretofore held, without in any manner releasing the decedent's estate from the liability provided for in the next preceding paragraph.

(emphasis added).[35]

The Kemper account agreement is entitled, "JOINT ACCOUNT WITH RIGHT OF SURVIVORSHIP." The Kemper survivorship agreement provided:

In the event of the death of either or any of us, *the entire interest in the joint account shall be vested in the survivor or survivors* on the same terms and conditions as theretofore held, without in any manner releasing the decedent's estate from the liability provided for in the next preceding paragraph.

(emphasis added).

The property described in both survivorship agreements were solely the "account[s]." Moreover, the provisions make clear that the property governed by the survivorship agreements were the "account[s]" existing at the death of one spouse. It is undisputed the securities were removed from "the accounts" when they were distributed in certificate form—before Kathryn's death. Both parties refer to the securities as having been "issued out of" the accounts. Holmes did not present any evidence showing the certificates were still considered part of the accounts or subject to the agreements with the brokerage firms after they were issued out of the accounts. Indeed, the Kemper account was not even in existence at Kathryn's death. Further, there were no provisions in the account agreements stating they would continue to apply after distribution of the securities. Therefore, any survivorship agreements governing the accounts did not encompass securities that had been issued out of the accounts before Kathryn's death.[36]

## B. Holmes's Arguments To The Contrary Are Unavailing.

Despite the language of the survivorship agreements, Holmes offers several reasons they continued to govern the character of the securities even after they were issued out of the accounts: (1) Kathryn and Thomas purchased the securities through the accounts; (2) distributions of securities were transactions governed by the account agreements; (3) it is standard practice for brokerage firms to issue certificates with the same ownership designation as the account from which they were distributed;

---

**35.** As explained more fully in the companion opinion, we have held that this paragraph was insufficient to create a right of survivorship because it is not clear from the agreement that Kathryn and Thomas actually chose this option.

**36.** As previously discussed, we have rejected Beatty's argument that Kathryn and Thomas could not include their survivorship agreements within larger brokerage firm account agreements; they were not required to execute separate survivorship agreements between themselves to govern the accounts. However, by including their survivorship agreements within larger brokerage firm account agreements, Kathryn and Thomas limited the survivorship agreements to governing only securities in the accounts—and not securities removed from the accounts.

and (4) Beatty admitted in a facsimile that the securities in certificate form were owned with the same designation as the brokerage accounts from which they were distributed. We find these arguments unavailing.

### 1. Purchase of the securities through the accounts

Holmes contends the securities were governed by the survivorship provisions in the brokerage account agreements because Kathryn and Thomas purchased the securities through the accounts. Thus, Holmes suggests Kathryn and Thomas must have intended to own the securities with a right of survivorship even after they were issued out of the accounts, and they were not required to execute a separate survivorship agreement to govern each certificate.

Holmes cites the portion of Probate Code section 451 providing that spouses may agree to establish a right of survivorship in community property "then existing or to be acquired." TEX. PROB.CODE ANN. § 451. However, application of the quoted portion in this case would mean the survivorship provisions governed all contents of the accounts whether present at inception or later purchased through the accounts. This portion of section 451 did not render securities subject to the survivorship agreements governing the accounts when they were no longer part of the accounts.

Kathryn and Thomas may have intended to own the securities in certificate form with a right of survivorship because they received the same property they had purchased through the accounts—just in a different form. However, this change in form of ownership is the paramount reason the survivorship agreements did *not* continue to apply. By changing their form of ownership, the spouses actually took the securities out of the accounts, thereby removing them from the purview of the survivorship agreements.

In fact, although we have found no case law on this issue, a commentator has cautioned:

> [I]t is important to describe with great specificity the exact community property covered so that the agreement is not subsequently deemed to cover more or less property than intended. This is especially important if the property subject to the agreement is likely to be sold *or otherwise converted into another form.*

Beyer, 10 Texas Law of Wills, § 60.9, p. 508 (emphasis added). Therefore, contrary to Holmes's suggestion, this commentator indicated a survivorship agreement may be affected when subject property is converted to a different form if the property was not adequately described in the agreement. We cannot find a right of survivorship based on assumptions about the spouses' likely intent because section 452 requires a written agreement creating a right of survivorship in "the described property." *See* TEX. PROB.CODE ANN. § 452.

Contrary to Holmes's assertion, Kathryn and Thomas could have easily executed a survivorship agreement describing all securities they held in certificate form or any other community property they owned. *See* Beyer, 10 Texas Law of Wills, § 60.9, p. 508 (recognizing that executing a survivorship agreement in community property is "simple, convenient, and inexpensive"); *see also* TEX. PROB.CODE ANN. § 452. However, they did not do so. Their survivorship agreements describing only the brokerage "account[s]" did not convey and effectuate any intent to also create a right of survivorship in securities after they were removed from the accounts.

### 2. Distributions of securities as transactions governed by the account agreements

In addition, Holmes argues the account agreements continued to apply to the securities in certificate form because distributions of securities were transactions governed by the account agreements. Holmes cites the affidavit of his expert, Warren L. Edmondson, opining that "the issuance and delivery of securities out of a particular account is a transaction of that account. . . ." Further, Holmes refers to account statements from Dain Rauscher and Kemper showing the distribution of certificates as transactions in the accounts.[37] We agree that all transactions, including the distribution of securities, were governed by the account agreements; it is axiomatic a brokerage account agreement would govern transactions concerning the securities in the account.

However, we are not considering whether a "transaction" is a joint tenancy with right of survivorship. Rather, we are considering whether the "property" distributed via the transactions was held with a right of survivorship. The purpose of the distribution transactions was to issue securities out of the accounts. Once the transactions were complete, the securities were no longer part of the accounts. Accordingly, although the transactions were subject to the account agreements, the securities distributed in certificate form were no longer subject to the survivorship agreements governing the accounts once the transactions were complete.

### 3. Typical practice of brokerage firms to issue certificates with the same designation as the account

Holmes further argues that the securities were held with a right of survivorship because brokerage firms typically issue certificates with the same ownership designation as the account from which they were distributed. Holmes notes that the Dain Rauscher account agreement identified the owners as "Thomas J. Holmes and Kathryn V. Holmes, JT TEN," and the same acronym is shown on the face of the certificates issued from the account. Although the Kemper account agreement did not contain the acronym "JT TEN," those initials are shown on the face of the certificate issued from the account. Apparently, Holmes acknowledges for purposes of this appeal that "JT TEN" on the face of the certificates is insufficient alone to create a right of survivorship in the securities. Rather, he suggests that use of the same designation on the certificates and in, at least, the Dain Rauscher account agreement demonstrates brokerage firms issue certificates with the same designation as the accounts; thus, the survivorship provisions in the account agreements must govern the securities that had been issued out of the accounts.

Holmes also cites the affidavit of Edmundson, in which he opined as follows:

> . . . securities must be issued in the same manner that the account is styled. For example, if an account is a joint tenancy with right of survivorship account, all securities issued and delivered out of that account must also be issued joint tenancy with right of survivorship. Whether a security is held in street

---

**37.** Holmes also cites substantially similar provisions in the Dain Rauscher and Kemper account agreements as purportedly establishing that distributions of securities were transactions governed by the account agreements. In essence, the provisions allowed either spouse to authorize delivery of securities and other transactions. When read in context, the purpose of the provisions was to protect the brokerage firms in the event they acted upon the instructions of only one spouse. These provisions did not specifically establish that distributions of certificates were transactions governed by the account agreements. Regardless we agree that distributions of securities were transactions governed by the account agreements

name or issued out directly to the customer has no effect on the ownership interest. The documents signed by the customers determines the account type and how the account is styled and those same documents determine how securities are issued out of the account.

However, the usual practice of brokerage firms to issue certificates with the same designation as the account does not supplant the requirement of section 452 that there be a written agreement signed by both spouses creating a right of survivorship in the certificates. *See* TEX. PROB. CODE ANN. § 452. Holmes points to survivorship provisions in the account agreements as purportedly providing the written agreements governing the certificates. However, as we have discussed, any survivorship agreements clearly described the "account[s]" only and not securities after they were removed from the accounts. Consequently, Holmes may not rely on the typical practice of brokerage firms to vary the clear terms of the survivorship provisions and expand them beyond the property clearly described therein. *Cf. Evans,* 946 S.W.2d at 374–75 (allowing extrinsic evidence regarding extent of property covered by survivorship agreement which was *ambiguous* regarding what CDs constituted the "account" described therein).

### 4. Beatty's fax

 Finally, Holmes suggests Beatty admitted in a fax that the securities in certificate form were owned with the same designation as the brokerage accounts from which they were distributed. On April 6, 2000 (after Kathryn's death, but before Thomas's death), Beatty sent a fax to the Holmes family assistant. He attached a list of various securities owned by Kathryn and Thomas. In the fax, he stated in pertinent part:

> Here are two lists of community assets (stocks and bonds) one managed by [Thomas] ... and the other managed by [Kathryn].... Any item styled COMM or JT COMM is considered community and subject to being divided equally between [Kathryn's Estate] and [Thomas]. Items styled JT WROS became [Thomas's] separate property on [the date of Kathryn's death] under the terms of the agreement signed at Raymond James & Associates.

Holmes relies on this fax primarily to support his argument that the Raymond James account was owned with a right of survivorship. However, Holmes also suggests that Beatty's statement that securities issued from the Raymond James account were owned with a right of survivorship pursuant to the account agreement means he viewed all certificates as owned with the same classification as the account from which they were distributed. In response, Beatty cites his own affidavit in which he effectively averred that the statements in his fax were incorrect and he subsequently attempted to retract them.[38] Holmes argues that, even if Beatty attempted to retract his statements, his fax raised, at least, a genuine issue of material fact on whether

---

**38.** Specifically, Beatty averred as follows: when he sent the fax, he had not consulted an attorney, he did not understand the legal requirements for creating a right of survivorship, he had not reviewed any of the account agreements, and he relied on information received from Holmes and his staff; he subsequently learned his statements regarding the manner in which securities were to be distributed, the abbreviations, and the Raymond James account were erroneous; and as soon as he realized the statements were erroneous, he attempted to retract them. Attached to Beatty's affidavit was his letter to Raymond James retracting and countermanding his earlier instructions regarding distribution of one certificate.

the securities were owned with a right of survivorship.

Irrespective of Beatty's attempts to retract his statements, the fax is extrinsic evidence that may not be considered when determining whether the Dain Rasucher and Kemper account agreements created a right of survivorship in the securities issued from the accounts. As we have discussed, the survivorship provisions clearly described the subject property as only the "account[s]." Thus, any implied opinion in Beatty's fax that the survivorship agreements governed securities which had been removed from the accounts cannot vary the clear terms of the agreements. *Cf. id.* Moreover, Beatty was not a party to the account agreements, and his statements were made after Kathryn executed the agreements. Accordingly, any interpretation by Beatty concerning the scope of the survivorship agreements is immaterial when determining Kathryn's intent as expressed in the agreements.

In sum, we hold that any survivorship agreements governing the Dain Rauscher and Kemper accounts did not apply to securities after they were issued out of the accounts in certificate form. Therefore, these securities did not pass to Thomas by right of survivorship upon Kathryn's death. Accordingly, the trial court properly granted Beatty's motion for summary judgment and denied Holmes's motion for summary judgment with respect to the securities in certificate form.

### VII. Security Issued Out Of The First Southwest Account

Finally, we address one security issued out of the First Southwest account in certificate form.[39] Holmes's brief is unclear on whether he is appealing the trial court's ruling with respect to this security. At the outset of his brief, he states this appeal involves the Raymond James and First Southwest accounts and securities issued out of the Dain Rauscher and Kemper accounts. However, in the body of his brief, he argues the trial court erroneously held the First Southwest account *and* a security issued from that account did not pass by right of survivorship to Holmes.

Holmes again contends that Kathryn and Thomas held this security with a right of survivorship because the First Southwest survivorship agreement continued to govern the security after it was distributed in certificate form. However, the trial court ruled that the First Southwest account was not owned with a right of survivorship, and we have upheld that ruling. Therefore, we may summarily reject Holmes's argument that the security issued out of this account in certificate form was owned with a right of survivorship pursuant to the account agreement. Accordingly, to the extent Holmes appeals the trial court's ruling with respect to this security, the trial court properly granted Beatty's motion for summary judgment and denied Holmes's motion for summary judgment.

### VIII. Conclusion

We sustain, in part, and overrule, in part, Holmes's first, second, and fourth issues, and we need not address his third issue. We reverse the "Amended Order on Douglas G. Beatty's Amended Motion for Partial Summary Judgment and Harry Holmes II's Motion for Partial Summary Judgment and Supplemental Motion for Partial Summary Judgment," signed March 18, 2005 with respect to the Raymond James account and render judgment that the securities held in Raymond James

---

**39.** This security is item 10 on the list of securities recited in the portion of the underlying order granting summary judgment in favor of Beatty.

& Associates, Inc. Account Number 17239796 at Kathryn V. Holmes's date of death, which includes the dividends, interest, and proceeds therefrom since the date of death of Kathryn V. Holmes, are the property of Harry Holmes, II, Independent Executor of the Estate of Thomas J. Holmes, Sr., Deceased, as assets of the Estate, and the Estate of Kathryn V. Holmes has no interest therein. We affirm the remainder of this order.