Harry HOLMES, II, Independent Executor of the Estate of Thomas J. Holmes, Sr., Deceased and as Trustee of Any Trust Named as a Legatee In the Will of Thomas J. Holmes, Sr., Deceased, Petitioners,

v.

Douglas G. BEATTY, Independent Executor of the Estate of Kathryn V. Holmes, Deceased, Respondent.

Harry Holmes, II, Independent Executor of the Estate of Thomas J. Holmes, Sr., Deceased and as Trustee of Any Trust Named as a Legatee In the Will of Thomas J. Holmes, Sr., Deceased, Petitioners,

v.

Douglas G. Beatty, Independent Executor of the Estate of Kathryn V. Holmes, Deceased, Respondent.

Nos. 07–0784, 07–0785.

Supreme Court of Texas.

Argued Dec. 5, 2008.

Delivered June 26, 2009.

Rehearing Denied Sept. 25, 2009.

Richard P. Hogan Jr., Jennifer Bruch Hogan, Matthew E. Coveler, Hogan & Hogan, L.L.P., Jack W. Lawter Jr., Dianne W. Lawter, Lawter & Lawter, L.L.P., Houston, TX, for Petitioner.

Joseph S. Horrigan, Linda C. Goehrs, Rudolph Michael Culp, Horrigan & Goehrs, L.L.P., Beverly Kaufman, Houston, TX, for Respondent.

Robin C. Gibbs, Brandon Trent Allen, Gibbs & Bruns LLP, Lawrence J. Pirtle, Gardere Wynne Sewell LLP, Houston, TX, for person interested in case.

Chief Justice JEFFERSON delivered the opinion of the Court.

After decades of debate in the bench, bar, and the Legislature about the ability of spouses to obtain rights of survivorship in community property, Texas citizens changed the constitution to confirm that right. The 1987 amendment provides that "spouses may agree in writing that all or part of their community property becomes the property of the surviving spouse on the death of a spouse." TEX. CONST. art. XVI, § 15. Two years later, the Legislature enacted Probate Code sections 451 through 462 to address the formalities necessary to the create a survivorship arrangement. *See* TEX. PROB.CODE §§ 451–62. Today we are asked to determine how these sections operate with respect to rights of survivorship in certain brokerage accounts and securities certificates issued from those accounts. We conclude that the account agreements and certificates at issue here created rights of survivorship. Accordingly, we reverse and render in part and affirm in part the court of appeals' judgment.

# I

**Factual and Procedural Background**

Thomas and Kathryn Holmes married in 1972. During their marriage, Thomas and

Kathryn amassed over ten million dollars in brokerage accounts and acquired securities certificates issued from those accounts. Kathryn died in 1999. Her will appointed Douglas Beatty, her son from a previous marriage, as the independent executor of her estate. Thomas died approximately nine months later. His son, Harry Holmes II ("Holmes"), also from a previous marriage, was appointed independent executor of his estate. The accounts and certificates were variously listed as "JT TEN"; "JT TEN *defined as* 'joint tenants with right of survivorship and not as tenants in common'"; "JTWROS"; and "Joint (WROS)." If those acronyms and definitions establish a right of survivorship, then Thomas acquired 100% upon Kathryn's death, and upon his death, the holdings would have passed under his will, which left nothing to Kathryn's children. If those designations were insufficient to create survivorship interests then, as community property, only 50% would have passed to Thomas, with the remaining 50% of the accounts and certificates passing under Kathryn's will, which left nothing to Thomas's children.

Beatty sought a declaration that all of the assets were community property; Holmes countered that the assets passed to Thomas through survivorship, and then to Thomas's beneficiaries following his death. On competing motions for summary judgment, the trial court concluded that some of the assets were held jointly with survivorship rights and others were community property. In two opinions, the court of appeals affirmed in part, reversed and rendered in part, and remanded for further proceedings. 233 S.W.3d 475, 494; 233 S.W.3d 494, 522–23. Holmes and Beatty petitioned this Court for review, which we granted. 52 Tex. Sup.Ct. J. 149 (Dec. 4, 2008). Because these two appeals

involve "substantially similar facts, arguments, and briefing," we have consolidated them into a single opinion and judgment. *Hubenak v. San Jacinto Gas Transmission Co.*, 141 S.W.3d 172, 179 (Tex.2004).

## II

## Development of Rights of Survivorship in Community Property in Texas

### A

### The *Hilley* Era

Texas has not always allowed spouses to create rights of survivorship in community property. In *Hilley v. Hilley*, 161 Tex. 569, 342 S.W.2d 565, 568 (1961), we held that it was unconstitutional for spouses to hold community property with rights of survivorship. The dispute in *Hilley* concerned whether stock purchased with community funds and "issued in the names of the husband and wife 'as joint tenants with rights of survivorship and not as tenants in common'" actually conferred rights of survivorship. *Id.* at 566. We reasoned that because this property was acquired during marriage with community funds and thus "by definition became community property," it was required to pass either under the decedent's will or under the intestacy statutes, absent a written agreement signed by the spouses partitioning the stock from their community property, thereby making it separate property. *Id.* at 568. We noted that to hold otherwise would directly contravene the constitution's community property provision. *Id.* (citing Tex. Cons T. art. XVI, § 15; Act of May 12, 1949, 51st Leg., R.S., ch. 242, § 1, 1949 Tex. Gen. Laws 450, 450, *repealed by,* Act of June 2, 1969, 61st Leg., R.S., ch. 888, § 6, 1969 Tex. Gen. Laws 2707, 2733 (former Tex.Rev.Civ. Stat. art. 4610)).

After *Hilley*, the Legislature amended the Probate Code in an attempt to recog-

nize survivorship rights in community property. Act of April 27; 1961, 57th Leg., R.S., ch. 120, § 1, 1961 Tex. Gen. Laws 233, *amended by* Act of May 22, 1969, 61st Leg., R.S., ch. 641, § 3, 1969 Tex. Gen. Laws 1922, 1922 ("It is specifically provided that any husband and his wife may, by written agreement, create a joint estate out of their community property, with rights of survivorship."). In *Williams v. McKnight*, 402 S.W.2d 505, 508 (Tex.1966), we considered the amendment's constitutionality. Citing *Hilley*, we held that any statutory attempt to grant survivorship rights in community property would be unconstitutional. *Id.* ("Constitutional limitations are as binding upon the Legislature as they are upon the Judiciary."). We reaffirmed that the only way for a couple to create survivorship rights was to partition their community property into separate property, then execute survivorship agreements for that separate property. *Id.* at 508. This process came to be known among practitioners as the "Texas Two-Step." *See, e.g.,* Robert N. Virden, *Joint Tenancy with Right of Survivorship & Community Property with Right of Survivorship,* 53 Tex. B.J. 1179, 1179 (1990). Subsequent decisions echoed this result. *See, e.g., Allard v. Frech,* 754 S.W.2d 111, 115 (Tex.1988) ("This holding is based on a firmly rooted principle of community property law which requires the actual partition of community property before a valid joint tenancy with the right of survivorship can be created."); *Maples v. Nimitz,* 615 S.W.2d 690, 695 (Tex.1981) (same).

## B

### The 1987 Constitutional Amendment and Subsequent Legislation

In 1987, the Legislature passed, and the Texas voters approved, a constitutional amendment authorizing rights of survivorship in community property. Tex. S.J. Res. 35, 70th Leg., R.S., 1987 Tex. Gen. Laws 4114, 4114–15. The amendment provided that "spouses may agree in writing that all or part of their community property becomes the property of the surviving spouse on the death of a spouse." Tex. Const. art. XVI, § 15. Two years later, the Legislature passed Senate Bill 1643, which added Part 3 to Chapter XI of the Probate Code concerning non-testamentary transfers. Act of May 26, 1989, 71st Leg., R.S., Ch. 655, § 2, 1989 Tex. Gen. Laws 2159, 2159–63. This new section governs "[a]greements between spouses regarding rights of survivorship in community property." Tex. Prob.Code § 46(b).

Probate Code sections 451 and 452 are at issue in this case. Section 451 states: "At any time, spouses may agree between themselves that all or part of their community property, then existing or to be acquired, becomes the property of the surviving spouse on the death of a spouse." *Id.* § 451. Section 452 lays out these requirements:

An agreement between spouses creating a right of survivorship in community property must be in writing and signed by both spouses. If an agreement in writing is signed by both spouses, the agreement shall be sufficient to create a right of survivorship in the community property described in the agreement if it includes any of the following phrases:

1. (1) "with right of survivorship";

2. "will become the property of the survivor";

3. "will vest in and belong to the surviving spouse"; or

4. (1) "shall pass to the surviving spouse."

An agreement that otherwise meets the requirements of this part, however, shall be effective without including any of those phrases.

*Id.* § 452. The Legislature stated that these agreements do not change the nature of community property: "Property subject to an agreement between spouses creating a right of survivorship in community property remains community property during the marriage of the spouses." *Id.* § 453.

With this constitutional amendment and legislation, the Legislature hoped to finally resolve the battle over survivorship rights in community property. The proponents [1] urged that these sorts of agreements were common in other states and simplified the transfer of certain assets to surviving spouses. *See* GERRY W. BEYER, 10 TEXAS PRACTICE SERIES: TEXAS LAW OF WILLS § 60.1 (3d ed.2002). As Professor Beyer noted, a community property survivorship agreement "is a simple, convenient and inexpensive method for many married people to achieve an at-death distribution of their community property that is in accord with their intent." *Id.* § 60.9.

As the amendment's drafters noted at the time, "[m]any Texas spouses hold a substantial amount of assets in a form that is ineffective to achieve their desired purpose." Senate Judiciary Comm., Resolution Analysis, Tex. S.J. Res. 35, 70th Leg., R.S. (1987). Supporters argued that the proposed constitutional amendment would "eliminate a trap for the unwary married couple who would execute a signature card provided by a financial institution and believe, mistakenly, that they have created

an effective joint tenancy with right of survivorship in relation to their community property." TEXAS LEGISLATIVE COUNCIL, ANALYSES OF PROPOSED CONSTITUTIONAL AMENDMENTS AND REFERENDA, INFO. REPORT, NO. 87–2 at 36 (Sept.1987).

The purpose of the amendment and accompanying legislation, then, was to provide "[a] simple means . . . by which both spouses by a written instrument can provide that the survivor of them may be entitled to all or any designated portion of their community property without the necessity of making a will for that purpose." Senate Judiciary Comm., Resolution Analysis, Tex. S.J. Res. 35, 70th Leg., R.S. (1987). As the committee observed, "many banks and savings and loans associations have often failed to provide forms by which their customers can create effective joint tenancies out of community property." *Id.* The amendment addressed these concerns by removing the constitutional hurdles to creating rights of survivorship in community property.

## III

### Application

The assets at issue in this case fall into two categories: (1) securities accounts and (2) securities certificates issued from those accounts. These two categories of assets are affected by distinct legal analyses, so we address each in turn.

### A

### The Securities Accounts

Thomas and Kathryn Holmes maintained investment accounts with multiple

---

**1.** The primary sponsor for the amendment and legislation was the Family Law Section of the State Bar of Texas. *See* GERRY W. BEYER,

10 TEXAS PRACTICE SERIES: TEXAS LAW OF WILLS § 60.1 (3d ed.2002).

financial institutions. Each of them was governed by an account agreement that dictated terms, such as who could manage the accounts and whether the accounts were held with rights of survivorship.

### 1

### Accounts Agreements With a "JT TEN" Designation

■ At the time of Kathryn's death, the Holmeses held two investment accounts whose agreements included the designation "JT TEN": one with Dain Rauscher, Inc. and another with First Southwest Company. Thomas and Kathryn opened the Dain Rauscher account in 1994. The account agreement, titled "JOINT ACCOUNT AGREEMENT" was styled "THOMAS J. HOLMES AND KATHRYN V. HOLMES, JT TEN." The agreement gave the account holders an option to strike through "paragraph (a) or (b) whichever is inapplicable." Paragraph (a) stated "it is the express intention of the undersigned to create an estate or account as joint tenants with rights of survivorship and not as tenants in common." Paragraph (b) gave the account holders the option to designate who would receive the interest in the account upon their death and the percentages each recipient would receive. The Holmeses struck neither provision. They both signed the agreement, and "Jt. Ten" appeared next to Kathryn's name on the signature line.

The Holmeses opened the First Southwest Account in 1997. The account agreement listed their names as "THOMAS J. HOLMES, KATHRYN V. HOLMES JT TEN." The agreement did not define "JT TEN" and did not include any further discussion of survivorship rights. Both Thomas and Kathryn signed the First Southwest account, as well.

The court of appeals held that neither of these agreements "clearly reflect[ed] intent to own the account with a right of survivorship." 233 S.W.3d 475, 481; *see also* 233 S.W.3d 494, 505. As to the Dain Rauscher account, the court noted that because the couple did not strike through paragraph (a) or (b), the agreement "did not affirmatively reflect any intent to effect a non-testamentary transfer—through a right of survivorship or otherwise." 233 S.W.3d 475, 481. The court also rejected Holmes's argument that the "JT TEN" designation on the agreements satisfied section 452's requirements: the "mere inclusion of 'JT TEN' next to Kathryn's and Thomas's names in the account title did not sufficiently convey intent to create a right of survivorship." *Id.* at 483. The court agreed with Beatty's argument that "parties may own property as joint tenants without being subject to a right of survivorship." *Id.;* 233 S.W.3d 494, 505.

■ We disagree with the court of appeals on each point. A joint tenancy carries rights of survivorship. *See, e.g., U.S. v. Craft,* 535 U.S. 274, 280, 122 S.Ct. 1414, 152 L.Ed.2d 437 (2002) ("The main difference between a joint tenancy and a tenancy in common is that a joint tenant also has a right of automatic inheritance known as 'survivorship.' Upon the death of one joint tenant, that tenant's share in the property does not pass through will or the rules of intestate succession; rather, the remaining tenant or tenants automatically inherit it."); 2 William Blackstone, Commentaries On The Laws Of England 183 (3rd ed. 1768) ("[The] remaining grand incident of joint estates [is] the doctrine of survivorship...."); Littleton's Tenures, Book III, ch. III, § 280 (Eugene W. Wambaugh ed., 1903) ("And it is to be understood, that the nature of-joint-tenan-

cy is, that he which surviveth shall have only the entire tenancy according to such estate as he hath . . . ."); 7 RICHARD R. POWELL, POWELL ON REAL PROPERTY § 51.03[3] (Michael Allan Wolf ed., 2000) ("Survivorship is central to a joint tenancy."). Contrary to Beatty's and the court of appeals' assertion then, a joint tenancy cannot be held without rights of survivorship; such a joint agreement would be a tenancy in common. *See Craft*, 535 U.S. at 280, 122 S.Ct. 1414; 7 POWELL ON REAL PROPERTY § 51.01[1] ("[A joint tenancy] is distinguished from a tenancy in common principally by the right of survivorship."). The financial industry's use of "joint tenancy" is also consistent with this view. *See, e.g.*, SEC. TRANSFER ASSOC., *Guidelines of the Securities Transfer Association* AV–1 (Oct.2005) (defining "Joint Tenancy" as a "[f]orm of ownership where two or more individuals hold shares as joint tenants with right of survivorship. When one tenant dies, the entire tenancy remains to the surviving tenants. JOHN BROWN & MARY BROWN JT TEN.").

Citing *Stauffer v. Henderson*, 801 S.W.2d 858, 865 (Tex.1990), the court of appeals held that it could not consider information that is not explicitly referenced in the agreement itself. 233 S.W.3d 494, 507. It therefore evaluated the designations "JT TEN" and "Jt. Ten" without reference to guidelines, codes, or custom. *Id.* at 509–13. In *Stauffer*, we held that under Probate Code section 439(a), concerning survivorship rights between non-spouses, parties could only establish survivorship using the statute's language (or language "substantially" similar to it), and a court could not consider other evidence to ascertain the parties' intent. *Stauffer*, 801 S.W.2d at 863–65 (citing TEX. PROB. CODE § 439(a)). Applying this holding to the current case, the court of appeals stated:

[W]e are addressing a situation in which Texas law dictates parties do not even have a certain type of agreement—a survivorship agreement—unless they have executed a written instrument complying with statutory formalities, including expression of their intent to create a right of survivorship. Therefore, if we must look outside the written instrument to determine that a term used therein means "right of survivorship," the parties have not expressed their intent within the written instrument.

233 S.W.3d 494, 511.

■ The court of appeals' reliance on *Stauffer*, however, was misplaced. Section 439(a) requires that a survivorship agreement between non-spouses use either the statute's language or a substitute that is "in substantially the [same] form." TEX. PROB.CODE § 439(a). Section 452 is less restrictive, presumably because agreements between spouses are less vulnerable to fraud. The constitutional amendment permitting survivorship agreements in community property was intended to facilitate the creation of such agreements, *see, e.g.*, Senate Judiciary Comm., Resolution Analysis, Tex. S.J. Res. 35, 70th Leg., R.S. (1987), and the Legislature's use of less confining language comports with that goal. Moreover, *Stauffer* precludes outside evidence, not reference to the common law or trade usage. *Cf.* RESTATEMENT (SECOND) OF CONTRACTS § 222 cmt. b ("There is no requirement that an agreement be ambiguous before evidence of a usage of trade can be shown . . . .").

Precedent, trade usage, and seminal treatises make clear that joint tenancies carry rights of survivorship, and the Holmeses' agreement included this designation. This does not fully answer, however, the inherent tension in owning

community property as "joint tenants." Professor Reed Quilliam noted in an article published shortly after the constitutional amendment and statutes were adopted that "[j]oint tenancy is a form of separate property ownership and is wholly incompatible with community property concepts." *See* W. Reed Quilliam, Jr., *A Requiem for* Hilley: *Is Survivorship Community Property a Solution Worse than the Problem?*, 21 TEX. TECH L.REV. 1153, 1167 (1990). In the same discussion, though, Professor Quilliam predicted that situations like this case were likely to arise:

> It is likely that misconceptions about the new form of property ownership will result in instances of spouses agreeing to hold community property "as joint tenants with right of survivorship" rather than merely "with right of survivorship." What will be the effect of such designation?

> Manifestly the property will remain community, although the spouses' agreement to hold with right of survivorship should be given effect to impress *this* characteristic on it. The property *cannot* be joint tenancy property, a form of separate property ownership, unless it has first been rendered separate by partition. The agreement of the spouse violates the constitution insofar as it seeks to establish a joint tenancy in community property. But the agreement to hold such property with right of survivorship is now constitutionally sanctioned.

*Id.* at 1168–69 (emphasis in original). We agree with Professor Quilliam. A "joint tenancy" or "JT TEN" designation on an account is sufficient to create rights of survivorship in community property under section 452. The Dain Rauscher and First Southwest accounts included this designation, and we "give effect to the written expression of the parties' intent." *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex.1998). Because the "JT TEN" designation was sufficient to indicate the Holmeses' intent to hold those accounts with rights of survivorship, we reverse the court of appeals' judgment on the Dain Rauscher and First Southwest accounts.

**2**

### The Raymond James Account

■ The Holmeses opened an investment account with Raymond James & Associates in 1995. The "New Account Form" gave Thomas and Kathryn the option to check a box for the "Account Classification." They chose "Joint (WROS)." The form also listed their names as "THOMAS J. HOLMES & KATHRYN V. HOLMES JTWROS." The trial court held that this account did not carry rights of survivorship, but the court of appeals reversed, holding "the Raymond James account agreement sufficiently conveyed Kathryn's and Thomas's intent to create a right of survivorship." 233 S.W.3d 494, 515.

The court of appeals reached this decision primarily based on the Holmeses' affirmative act of checking the "Joint (WROS)" box:

> Kathryn and Thomas affirmatively selected an "Account Classification." They were presented with fourteen options for the account classification and selected "Joint (WROS)" to the exclusion of all other options. Significantly, Kathryn and Thomas rejected "tenancy in common"—the very designation that Beatty attempts to assign to this ac-

count. We can conceive of no other meaning Kathryn and Thomas could have contemplated for "Joint (WROS)," considering that none of the other options can possibly be construed as meaning joint tenancy with rights of survivorship.

*Id.* at 515.

We agree with the court of appeals that "Joint (WROS)" means "joint tenancy with rights of survivorship." As such, this indicated the Holmeses' intent to obtain rights of survivorship in this account. This designation, along with Thomas's and Kathryn's signatures on the form, satisfy section 452's requirements. We therefore affirm the court of appeals' judgment on the Raymond James account.

## B

### The Securities Certificates

Securities issued in certificate form represent the other category of assets in dispute. Kathryn and Thomas opened accounts with several brokerage companies during their marriage, investing in a combination of stocks and bonds. Over time, the respective brokerage companies distributed some of these individual securities, in certificate form, to the Holmeses. The certificates themselves had various designations, such as "JT TEN"; "JT TEN-as joint tenants with right of survivorship and not as tenants in common"; and "JT WROS."

None of the certificates were signed by Kathryn or Thomas. As the court of appeals pointed out, it would have been unusual for them to do so. 233 S.W.3d 475, 484 ("None of the certificates at issue were signed by Kathryn or Thomas because owners do not typically sign stocks or bonds until they are ready to sell or redeem them."). Beatty contends that these individual certificates must satisfy the requirements of section 452 on their own, and because they were unsigned, they fail to do so. Holmes posits two alternative theories for establishing rights of survivorship in the certificates: (1) the survivorship language on the certificates is valid under section 450 of the Probate Code, and alternatively, (2) the survivorship language in the underlying account agreements govern the securities themselves. The court of appeals disagreed with Holmes on both theories and held that none of the certificates were held with rights of survivorship. 233 S.W.3d 475, 483, 233 S.W.3d 494, 522. We agree that section 450 is inapplicable to these assets, but we disagree with the court of appeals on Holmes's second argument. Because we hold that the agreements' survivorship language conferred survivorship rights in the certificates until the Holmeses disposed of them, the certificates passed to Thomas pursuant to those rights.

### 1

### Texas Probate Code Section 450

■ Texas Probate Code section 450 falls under Part 2 of the chapter dealing with nontestamentary transfers. TEX. PROB.CODE § 450. Section 450 states, in relevant part:

(a) Any of the following provisions in [a] ... bond, [or] ... securities ... is deemed to be nontestamentary, and this code does not invalidate the instrument or any provision:

(1) that money or other benefits theretofore due to, controlled, or owned by a decedent shall be paid after his death to a person desig-

nated by the decedent in either the instrument or a separate writing, including a will, executed at the same time as the instrument or subsequently. . . .

*Id.* Holmes argues that this language controls the securities certificates, and that the various designations found on the certificates (e.g. "JT TEN") establish rights of survivorship in those assets, and that section 452's requirements cannot "invalidate" this agreement. The court of appeals disagreed, holding that Part 3 of Chapter XI controlled, and Holmes, therefore, could not rely on section 450 to establish rights of survivorship in the certificates. 233 S.W.3d 475, 490. We agree with the court of appeals.

Probate Code section 46(b) states that "[a]greements between spouses regarding rights of survivorship in community property are governed by Part 3 of Chapter XI of this code." TEX. PROB.CODE § 46(b). The court of appeals correctly noted that this provision makes it clear that "section 450 irreconcilably conflicts with Part 3." 233 S.W.3d 475, 489. To hold otherwise would allow parties to circumvent section 452's writing and signature requirements. By enacting section 46(b) at the same time as sections 451 through 462 (Chapter XI, Part 3 of the Probate Code), the Legislature provided that Part 3 is the exclusive means to establish rights of survivorship in community property.

## 2

### Texas Probate Code Section 455

█ Holmes also argues that the certificates issued from the Holmeses' investment accounts retained the survivorship rights established by their respective account agreements pursuant to section 455.

Section 455 falls within the Probate Code's discussion of survivorship rights in community property. TEX. PROB.CODE § 455. Section 455, titled "Revocation," states:

An agreement between spouses made in accordance with this part of this code may be revoked in accordance with the terms of the agreement. If the agreement does not provide a method for revocation, the agreement may be revoked by a written instrument signed by both spouses or by a written instrument signed by one spouse and delivered to the other spouse. The agreement may be revoked with respect to specific property subject to the agreement by the disposition of such property by one or both of the spouses if such disposition is not inconsistent with specific terms of the agreement and applicable law.

*Id.* Holmes argues that because Thomas and Kathryn never executed a revocation agreement pursuant to this section, and because the certificates were never disposed of, the account agreements govern the certificates. Beatty argues that the act of alienating the certificates from the accounts acted as a "disposition." We disagree.

█ Once the survivorship agreement was in place, the only means of revoking it was pursuant to the statute, i.e., through a subsequent written agreement or a disposition of the assets covered by the agreement. Section 455 does not define what constitutes a "disposition." Therefore, we give it its "ordinary meaning." TEX. GOV'T CODE § 312.002. Black's Law Dictionary defines "disposition" as "[t]he act of transferring something to another's care or possession, esp. by deed or will; the relinquishing of property." BLACK'S LAW DICTIONARY 505 (8th ed.2004). Webster's defines "disposition" as "a giving over to the

care or possession of another, or a relinquishing." WEBSTER'S THIRD NEW INT'L DICTIONARY 654 (2002).

The issuance of securities in certificate form is not a "disposition" under the statute. The certificates were issued in the Holmeses' names, so ownership never changed; there was no "relinquishment" of the assets. As the court of appeals observed, "Kathryn and Thomas may have intended to own the securities in certificate form with a right of survivorship because they received the same property they had purchased through the accounts—just in a different form." 233 S.W.3d 494, 519. We agree that this was likely the Holmeses' expectation, especially because survivorship designations appeared on each of the certificates themselves, among them "JT WROS," "JT TEN," and "JT TEN-as joint tenancy with right of survivorship and not as tenancy in common."

Because we hold that issuing these certificates did not revoke the accounts' survivorship agreements, the certificates retained survivorship rights. We held above that the Dain Rauscher, First Southwest, and Raymond James accounts were held with rights of survivorship, so the certificates that were issued from those accounts carried the rights of survivorship established by those accounts' agreements. We therefore reverse the court of appeals judgment as to those certificates.

■ At the time of Kathryn's death, the Holmeses also held securities in certificate form issued from accounts once held with Kemper Securities and Principal/Eppler, Guerin & Turner.[2] We must determine, then, whether the Kemper Securities and

Principal account agreements established rights of survivorship. The Kemper account agreement was titled "JOINT ACCOUNT WITH RIGHT OF SURVIVORSHIP" and was signed by both spouses. This meets the test we established above to create rights of survivorship in an investment account. The agreement for the account held with Principal/Eppler, Guerin & Turner listed the Holmeses' names as "Thomas J. Holmes & Kathryn V. Holmes JTWROS" and was signed by both. This agreement, too, established rights of survivorship in the account. Because both of these accounts were held with rights of survivorship, so too were the certificates issued from those accounts. Accordingly, we reverse the court of appeals' judgment as to these securities.

## IV

### Conclusion

The 1987 constitutional amendment and accompanying legislation sought to facilitate the creation of rights of survivorship in community property and eliminate the constitutional hurdles spouses faced when attempting to establish such rights. The Holmeses' account agreements clearly indicated their intent to create rights of survivorship in those accounts. The rights were not lost when the Holmeses later obtained some of their investments in certificate form. Pursuant to these survivorship agreements, each of the accounts and certificates at issue in this case passed to Thomas upon his wife's death, and then by will to Thomas's beneficiaries when he died. If the Holmeses had wished an alternate devise, they could have made ap-

---

**2.** These accounts were no longer active at the time of Kathryn's death, but this does not affect our analysis. The account agreements continued to act as an expression of the Holmeses' intent as it related to the certificates.

propriate provisions in their respective wills. As they did not, we reverse and render in part and affirm in part the court of appeals' judgment. Tex.R.App. P. 60.2(a), (c).