# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00727-CV

**Trudy Randall Rowsey, Appellant**

**v.**

**Louis Michael Matetich, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
## NO. D-1-GN-08-000762, HONORABLE JON N. WISSER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Trudy Randall Rowsey brings a restricted appeal from a no-answer default judgment rendered against her. The judgment declared that two agreements between her and appellee Louis Michael Matetich failed for lack of consideration and were unenforceable and awarded Matetich $15,000 in attorney's fees. In four points of error, Rowsey argues that (1) the district court lacked personal jurisdiction over her because the substituted service the court ordered was defective, (2) the district court lacked subject-matter jurisdiction over the suit because the probate court had jurisdiction, (3) the district clerk failed to give Rowsey notice of a modified version of the default judgment, and (4) the district court erred as a matter of law by finding that the two agreements at issue were unenforceable for lack of consideration. Because we find no error apparent on the face of the record, we will affirm.

**BACKGROUND**

According to Matetich's petition, Rowsey's mother, Seareatha Matetich, married Matetich in 1985.[1] Seareatha died on February 18, 2006. Rowsey was the sole beneficiary of Seareatha's holographic will. The will was admitted to probate on May 24, 2006, and Rowsey was appointed independent administrator of her estate.

About a month after Seareatha's death, on March 27, 2006, Rowsey and Matetich entered into two agreements, one entitled "Agreement Between the Parties Regarding the Estate of Seareatha Carson Matetich" ("estate agreement") and the other entitled "Agreement Between the Parties" ("personal affairs agreement"). The estate agreement purported to constitute "all agreements between the parties' business affairs [sic]," while the personal affairs agreement purported to constitute "all agreements made between the parties' personal affairs [sic]."

Certain provisions of the estate agreement concerned the transfer of property that had belonged to Seareatha. Matetich agreed to "transfer, deed, convey, and/or relinquish one-half of all that is deemed community property in the laws of the state of Texas" to Rowsey, including all real property. He also agreed that "ALL that was Seareatha Carson Matetich's, in life (February 18, 2006), is now legally, rightfully, and exclusively Trudy Randall Rowsey's, regardless of its location on the planet." Both parties agreed that "no changes can be made to/with any asset of the estate's real property or intellectual properties without the written consent of the other."

Matetich and Seareatha owned two real properties located in New Zealand as joint tenants with right of survivorship. Matetich alleges that based on one or both agreements,

---

[1] For clarity, we will refer to Seareatha by her first name.

2

Rowsey filed a "Caveat against dealings with land under Land Transfer Act 1952" in New Zealand on the two real properties, preventing Matetich from selling the properties. According to Matetich's New Zealand counsel, Matetich would be able to remove the caveat in New Zealand if he obtained a judgment from a Texas court that the purported agreements are not valid contracts under Texas law.

On March 4, 2008, Matetich sued Rowsey seeking a declaration that the two agreements failed for lack of consideration. Matetich asserted alternative claims that the agreements were unenforceable based on fraud in the inducement and material misrepresentation, mutual mistake, and unconscionability. He also asserted a claim for tortious interference with the sale of the New Zealand properties and sought actual damages, lost profits, exemplary damages, and attorney's fees. Matetich attached both agreements and the caveat to his petition.

After several failed attempts at serving Rowsey in person and by certified mail, Matetich filed a motion for substituted service to which he attached three affidavits attesting to Rowsey's usual place of abode and two process servers' efforts to serve Rowsey. The district court granted the motion on April 24, 2008, and ordered that service could be made "by mailing a copy to [Rowsey] via first class at: [Rowsey's] usual place of abode: 203 Oxbow Trail, Marble Falls, Texas 78654." The executed service of citation was filed on April 28, 2008.

After service by mail, no answer had been filed by May 19, 2008. Matetich moved for default judgment on May 20, 2008. The district court heard the motion and signed the judgment that same day, declaring that the agreements "fail for lack of consideration and are unenforceable."

The district court also awarded $15,000 in attorney's fees to Matetich under section 37.009 of the civil practice and remedies code.

Later that day, Matetich moved to modify the judgment because it incorrectly stated that the date that the agreements were signed was March 27, 2008 instead of March 27, 2006. The court granted the motion on the same day (May 20, 2008) and signed a judgment with the correct 2006 date for the agreements. The modified judgment also was filed with the district clerk on May 20, 2008.

On June 20, 2008, Rowsey filed an answer and counterclaim.[2] Rowsey brought this restricted appeal on November 20, 2008.[3]

## ANALYSIS

A restricted appeal constitutes a direct attack on a default judgment. Tex. R. App. P. 30; *General Elec. Co. v. Falcon Ridge Apartments, Joint Venture*, 811 S.W.2d 942, 943 (Tex. 1991). As the party filing a restricted appeal, Rowsey must show that: (1) she brought the appeal within six months after the trial court signed the judgment; (2) she was a party to the suit;

---

[2] Rowsey also filed a motion for new trial that day. Matetich responded to the motion for new trial asserting that the motion was not timely filed because the thirty-day deadline to file the motion had expired on June 19, 2008. On appeal, Rowsey concedes that the motion for new trial was not timely filed.

[3] According to correspondence received by the Court from Rowsey's counsel, Rowsey died on February 25, 2009. Rowsey's counsel requested extensions of time to file her appellant's brief to allow her estate time to determine whether to pursue the appeal. Rowsey's appellant's brief was filed on January 6, 2010. We "will proceed to adjudicate the appeal as if all parties were alive." Tex. R. App. P. 7.1(a)(1). Rowsey's appeal involves, at a minimum, $15,000 in attorney's fees, so her appeal is not mooted by her death. *See Kenseth v. Dallas County*, 126 S.W.3d 584, 593-94 (Tex. App.—Dallas 2004, pet. denied).

(3) she did not participate in the hearing that resulted in the complained-of judgment and did not timely file any postjudgment motions or requests for findings of fact and conclusions of law; and (4) error is apparent from the face of the record. *See* Tex. R. App. P. 26.1(c), 30; *Alexander v. Lynda's Boutique*, 134 S.W.3d 845, 848 (Tex. 2004). Only the fourth element, whether error is apparent from the face of the record, is in dispute here. The record, for purposes of a restricted appeal, consists of the clerk's record and the reporter's record if one was made, and it includes any evidence presented to the trial court before final judgment. *See Norman Commc'ns v. Texas Eastman Co.*, 955 S.W.2d 269, 270 (Tex. 1997) (per curiam); *General Elec.*, 811 S.W.2d at 942, 944 ("The rule has long been that evidence not before the trial court prior to final judgment may not be considered in a [restricted appeal] proceeding.").

A plaintiff may take a default judgment against the defendant if the defendant has not previously answered, as long as the citation and return of service have been on file with the clerk for 10 days. Tex. R. Civ. P. 107, 239. A no-answer default judgment is properly granted if (1) the plaintiff files a petition that states a cause of action, (2) the petition invokes the trial court's jurisdiction, (3) the petition gives fair notice to the defendant, and (4) the petition does not disclose any invalidity of the claim on its face. *Paramount Pipe & Supply Co. v. Muhr*, 749 S.W.2d 491, 494 (Tex. 1988). A no-answer default results in the defaulting defendant's admission of all facts properly pled in the petition (except for the amount of unliquidated damages). *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 930 (Tex. 2009) (per curiam). Thus, if the facts set out in the petition allege a cause of action, the default judgment conclusively establishes the defendant's liability. *Morgan v. Compugraphic Co.*, 675 S.W.2d 729, 731 (Tex. 1984). As a result, our review

5

is limited to determining whether Matetich's petition discloses any invalidity of his claim; Rowsey is precluded from challenging the legal and factual sufficiency of the evidence supporting her liability. *See Texaco, Inc. v. Phan*, 137 S.W.3d 763, 770 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (citing *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992); *Morgan*, 675 S.W.2d at 731)).

In her first point of error, Rowsey challenges the district court's jurisdiction over her, asserting that the substituted service ordered by the district court was defective. In a restricted appeal, defective service of process constitutes error on the face of the record. *Primate Constr., Inc. v. Silver*, 884 S.W.2d 151, 153 (Tex. 1994) (per curiam). Strict compliance with the procedural rules governing citation and return of service must affirmatively appear on the record if the default judgment is to withstand direct attack. *Id.* at 152; *see also* Tex. R. Civ. P. 99, 103, 105, 106, 107. When reviewing a default judgment, we make no presumptions in favor of valid issuance, service, and return of citation. *Primate Constr.*, 884 S.W. 2d at 152. Whether service strictly complied with the rules is a question of law that we review de novo. *Furst v. Smith*, 176 S.W.3d 864, 868-70 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

Matetich filed a motion for substituted service after several failed attempts at serving Rowsey in person and by certified mail. Rule 106(b) governs substituted service. Rule 106(b) provides:

> Upon motion supported by affidavit stating the location of the defendant's usual place of business or usual place of abode or other place where the defendant can probably be found and stating specifically the facts showing that service has been attempted under either (a)(1) [personal service] or (a)(2) [registered or certified mail]

6

at the location named in such affidavit but has not been successful, the court may authorize service

(1) by leaving a true copy of the citation, with a copy of the petition attached, with anyone over sixteen years of age at the location specified in such affidavit, or

(2) in any other manner that the affidavit or other evidence before the court shows will be reasonably effective to give the defendant notice of the suit.

Tex. R. Civ. P. 106(b).

In support of his motion, Matetich attached three affidavits, his own and two from process servers who had attempted to serve Rowsey. Matetich attested that Rowsey's usual place of abode was 203 Oxbow Trail, Marble Falls, Texas 78654, based on his personal knowledge. One private process server, Jacklynn Gaye Malarkey, attested that she had attempted to serve Rowsey personally at the same address on three different dates at different times of day (March 13, 2008 at 6:30 p.m.; March 15, 2008 at 9:00 a.m.; and March 17, 2008 at 7:45 p.m.). For each attempt, she noted that the residence was gated and she could not gain access to it and that she honked her horn and there was no movement. On her first attempt, she left a notice on the gate. She noted on the second attempt that there were four trucks in the driveway, and on the third attempt, she noted that there were five trucks in the driveway.

The other private process server, Mike Techow, attested that he had "attempted to make personal delivery to [Rowsey] at his/her place of abode, being 203 Oxbow Trail, Marble Falls, TX 78654, which was established personally in my efforts." He also documented his attempt to serve Rowsey via certified mail. He identified the certified mail receipt number, noted that "certified has not come back after 2 attempts, notice has been left and documents have not been claimed," and

7

attached a tracking receipt from the United States postal service dated April 17, 2008 for same certified mail receipt number. The tracking receipt stated that notice had been left in "Marble Falls, Texas 78654" by the postal service and that the item could be redelivered by the postal service or picked up at the post office, and if not claimed, would be returned to sender. Techow attested that on April 17, 2008, he "deemed it impractical to personally deliver the Citation, Plaintiff's Original Petition and Plaintiff's Request for Disclosure" to Rowsey. He also stated that he believed Rowsey "can and will be given notice of these proceedings by delivering to anyone over the age of sixteen (16) at the defendant's usual place of abode or work[,] by attaching the above listed documents to the front entrance of the defendant's usual place of abode or work, or by first class mail."

In his motion for substituted service, Matetich sought to serve Rowsey either by leaving the citation with a copy of the petition and order attached "with anyone 16 years of age or older at the location specified in the attached affidavit, by posting a copy on [Rowsey's] front door, by mailing a copy to [Rowsey] via first class mail or by such other order of the Court as it deems appropriate under the circumstances." The district court granted the motion on April 24, 2008, crossing out the other options and ordering that "service of citation may be made on Defendant, Trudy Elizabeth Rowsey, by mailing a copy to [Rowsey] via first class at: [Rowsey's] usual place of abode: 203 Oxbow Trail, Marble Falls, Texas 78654." The court accepted the facts in both process servers' affidavits as true and incorporated them into its order. The court also found that both process servers exercised due diligence in their attempts to serve Rowsey and that "[t]he manner of service ordered herein will be reasonably effective in giving [Rowsey] notice of the suit."

The court further ordered that the person executing the return must make proof of service by "stating when the citation was served, on whom it was served, and where it was served."

Rowsey makes two arguments in support of her claim that the substituted service was defective. First, she challenges Matetich's affidavit as "conclusory" because it "does not provide any probative evidence that Rowsey's usual abode is at that address [203 Oxbow Trail, Marble Falls, Texas 78654]." Second, she argues that even if the affidavits are sufficient to allow the district court to authorize substituted service, Matetich did not meet his burden of showing that service via regular mail was reasonably calculated to give Rowsey notice of suit. She contends that Matetich should have provided "evidence from the U.S. Post Office or elsewhere to demonstrate that Rowsey receives mail at that address." Rowsey complains that Techow's statement that he believed Rowsey could and would be served by mail is conclusory and renders his affidavit insufficient because Techow provided no facts supporting his "legal conclusion."

We disagree with Rowsey's characterization of the affidavits. Matetich, Rowsey's stepfather, attested to her usual place of abode based on his personal knowledge. This satisfies rule 106(b)'s requirement that the affiant state "the location of the defendant's usual place of business or usual place of abode or other place where the defendant can probably be found." Tex. R. Civ. P. 106(b). Moreover, in addition to Matetich's affidavit, Techow also attested that he had personally established that the Oxbow Trail address was Rowsey's usual place of abode in his attempt to personally serve her. In addition, Techow attested to his unsuccessful attempts to serve Rowsey both personally and by certified mail. These are facts within the affiants' personal knowledge, not legal conclusions. The evidence before the district court was sufficient

9

under rule 106(b) to support the court's finding that Rowsey's usual place of abode was at 203 Oxbow Trail and to support its order allowing substituted service.

The evidence was also sufficient to support the district court's order allowing substituted service by regular mail. Malarkey attested that the residence was gated, which indicates that neither service at the residence by delivery to a person over 16 nor service by posting a copy on the front door would be reasonably effective methods of giving Rowsey notice of the suit, leaving only regular mail and publication as viable alternatives. Rowsey contends that Matetich did not meet his burden of showing that service by regular mail would be reasonably effective to give her notice of the suit because he did not present evidence that Rowsey "was actually receiving mail at the address for service." Rowsey asserts that the supreme court's holding in *Hubicki v. Festina*, 226 S.W.3d 405, 408 (Tex. 2007) (per curiam), requires a plaintiff to present such evidence before service by regular mail may be authorized.

*Hubicki* does not impose such a requirement. *Hubicki* involved substituted service authorized by the trial court to be made on the defendant Hubicki by first class mail and certified mail at a post office box associated with a house he owned in Mexico. *Id.* at 406. The plaintiff's petition alleged that Hubicki had a Texas "residential address" and could be served at his house in Mexico. *Id.* The plaintiff made only one attempt to serve Hubicki by certified mail in Mexico before moving for substituted service. *Id.* at 407-08. There are several important differences between *Hubicki* and this case. One is that the address at which the substituted service was authorized was not Hubicki's "residential address," in contrast to the testimony here that the Oxbow Trail address was Rowsey's usual place of abode. In addition, the court found that there was

10

no evidence that Hubicki was in Mexico at the time the plaintiff attempted service there because almost a month passed between the date of the affidavit stating that Hubicki was in Mexico and the attempted service. *Id.* at 408. The court noted that "there is no evidence that Hubicki was actually receiving mail at the address [the plaintiff] provided," when differentiating the circumstances present in *Hubicki* from those present in *State Farm Fire & Casualty Co. v. Costley*, 868 S.W.2d 298, 299 (Tex. 1993) (per curiam).

In *Costley*, the supreme court held that the trial court properly authorized substituted service upon a defendant by first class mail. *Id.* State Farm made ten failed attempts to achieve personal service on the defendant, who was a State Farm homeowners' insurance policyholder, before requesting substituted service. *Id.* at 298. State Farm presented the trial court with evidence of various correspondence between it and the defendant related to his homeowners' policy. *Id.* at 299. The correspondence included documents that State Farm had sent to the defendant's mailing address and a response from the defendant to correspondence sent to his mailing address. *Id.* The supreme court held "[t]his was sufficient evidence to establish that notice sent to this address would be reasonably effective to give Costley notice of the suit." *Id.* The court noted that "[s]ervice by mail achieves a similar result [to service by leaving copies with someone over the age of 16 at the defendant's place of abode] because it allows a plaintiff to properly post a return of service which demonstrates that the plaintiff has precisely followed the court's order of service by means reasonably calculated to provide actual notice." *Id.* Thus, service by mail achieves the purpose of rule 106(b) which is "to allow plaintiffs to effect service where proof of actual notice under Rule 106(a) is impractical." *Id.* at 298.

11

The circumstances of this case are more similar to *Costley* than to *Hubicki*.[4]  Only after multiple attempts at service at Rowsey's gated residential address did Matetich move for substituted service.  Under these circumstances, Matetich's testimony that the Oxbow Trail address was Rowsey's usual place of abode, combined with Techow's testimony that he had personally established it was her place of abode in the same time frame as the motion's filing, was sufficient evidence to support the district court's finding that service by mail would be reasonably effective in giving Rowsey notice of the suit.  Thus, the record affirmatively shows that the district court properly authorized substituted service in compliance with rule 106(b).

Matetich's return of service also strictly complied with the rules of civil procedure, as required for the default judgment to withstand direct attack.  *See Primate Constr.*, 884 S.W. 2d at 152.  Rule 107 requires an adequate return of service before a court may grant a default judgment. The rule provides that "[w]here citation is executed by an alternative method as authorized by

---

[4] Rowsey also relies on this Court's prior opinion in *Titus v. Southern County Mut. Ins.*, No. 03-05-00310-CV, 2009 WL 2196041 (Tex. App.—Austin July 24, 2009, no pet.) (mem. op.). Rowsey asserts that this Court reversed a default judgment in a case with similar facts to this one in *Titus*.  We disagree that the facts of this case are similar to those in *Titus*.  The relevant facts in *Titus* were more similar to *Hubicki*.  *Id.* at *4.  In *Titus*, the insurance company had made only a single attempt to serve Titus via certified mail at the service address; no personal service had been attempted.  *Id.* at *3.  The process server had not personally verified that the address was the defendant's usual place of abode, and his affidavit did not state that the address was the defendant's usual place of abode or other place where she could probably be found.  *Id.*  Unlike this case, the parties to the lawsuit did not have a personal relationship.  The only evidence the insurance company submitted to support that the address was a place where the defendant received mail was a form from the postal service that confirmed "Address good.  No change of address order on file." *Id.*  We found this form, "without more, does not affirmatively show that the location stated in the affidavit was, at that time or ever, Titus's usual place of abode" because people can receive mail at locations other than their usual place of abode.  *Id.*  Under those circumstances, we held the insurance company had not established either that substituted service was required or that service via regular mail was reasonably calculated to provide notice.  *Id.* at *4.

12

Rule 106, proof of service shall be made in the manner ordered by the court." Tex. R. Civ. P. 107. Here, the district court ordered that the person executing the return must make proof of service by "stating when the citation was served, on whom it was served, and where it was served." The citation filed with the process server's service-return affidavit stated that the petition was served on "Trudy Elizabeth Randall, aka Trudy Rowsey, 203 Oxbow Trail, Marble Falls, Texas 78654," and the affidavit stated that he "served citation . . . via first class mail per order for substitute service" on April 24, 2008 at 2:30 pm. A copy of the order and the stamped envelope addressed to Rowsey were also attached to the executed citation. Since the return of service states the date of service on Rowsey at her Oxbow Trail address by first-class mail, in accordance with the court's order, the record affirmatively shows strict compliance with rule 107. Accordingly, we hold that the district court had jurisdiction over Rowsey because the substituted service was not defective, and we overrule Rowsey's first point of error.

In Rowsey's second point of error, she challenges the district court's subject-matter jurisdiction over the case. Rowsey argues that instead the probate court had jurisdiction under former probate code sections 5 and 5A because probate proceedings were pending in the probate court at the time Matetich filed his suit and this is a matter "appertaining to an estate or incident to an estate." *See* Act of May 28, 2003, 78th Leg., R.S., ch.1060, §§ 2, 4, 2003 Tex. Gen. Laws 3052, 3053-54. Rowsey contends that Matetich's claims directly affected the estate's administration because he sought a determination "whether certain land is property of the estate" and that the agreements were not valid contracts. She argues that this error is apparent from the face of the record because Matetich's petition refers to the probate proceedings.

13

Former section 5 of the probate code provides that "[a] statutory probate court has jurisdiction over any matter appertaining to an estate or incident to an estate and has jurisdiction over any cause of action in which a personal representative of an estate pending in the statutory probate code is a party." *See* Act of May 28, 2003, 78th Leg., R.S., ch.1060, § 2, 2003 Tex. Gen. Laws 3052, 3053 (former Tex. Prob. Code Ann. § 5(h)). Former section 5A of the probate code provides that a matter is appertaining to or incident to an estate if, among other things, it is a claim "by or against an estate," an action for trial of title to land, or a matter "relating to the settlement, partition and distribution" of an estate. *See* Act of May 28, 2003, 78th Leg., R.S., ch.1060, § 4, 2003 Tex. Gen. Laws 3052, 3054 (former Tex. Prob. Code Ann. § 5A(b)). To determine whether this case is a matter appertaining to or incident to Seareatha's estate, we review Matetich's pleadings. *See In re SWEPI, L.P.*, 85 S.W.3d 800, 805 (Tex. 2002) (determining whether controlling issue is settlement, partition, or distribution of estate); *In re Graham*, 971 S.W.2d 56, 59 (Tex. 1998) (determining whether divorce proceeding is appertaining to or incident to guardianship estate).

A review of Matetich's pleadings shows that the probate court does not have subject-matter jurisdiction over Matetich's suit. Matetich sued Rowsey personally, not in her capacity as personal representative of Seareatha's estate. And contrary to Rowsey's characterization of his petition, Matetich did not "seek to determine whether certain land is property of the estate." He did not seek to try the title of the New Zealand properties—he sought a declaration that the agreements between him and Rowsey were invalid as contracts. Although Matetich alleges that the declaration that he seeks will have the *effect* of allowing a New Zealand court to remove the

14

caveat from the title to the New Zealand properties, he did not seek that *result* (a clear title) from the district court here.

In addition, Matetich's claim here cannot be considered a claim "seeking settlement, partition, [or] distribution of [Seareatha's] estate." Matetich alleged that he and Seareatha owned the New Zealand properties as "joint tenants with right of survivorship." As stated above, a no-answer default judgment results in admission by the defaulting defendant of all facts properly pled in the plaintiff's petition (except for the amount of unliquidated damages). *Dolgencorp*, 288 S.W.3d at 930. Property owned by spouses as joint tenants with a right of survivorship is a nontestamentary asset and is governed by chapter XI of the probate code concerning nontestamentary transfers. *See Holmes v. Beatty*, 290 S.W.3d 852, 855 (Tex. 2009); *see also* Tex. Prob. Code Ann. §§ 451, 454 (West 2003). Nothing on the face of the record indicates that the New Zealand properties are part of Seareatha's estate. Therefore, the district court, not the probate court, had jurisdiction over this case, and there is no error apparent on the face of the record. We overrule Rowsey's second point of error.

Rowsey contends in her third point of error that the district clerk's alleged failure to send notice of the modified final judgment was reversible error. Rowsey argues that the district clerk had an obligation under rule 306a to notify her that the modified judgment had been entered. *See* Tex. R. Civ. P. 306a(3), (4). The first final judgment and the modified judgment were both signed on May 20, 2008. While the first final judgment, which contained the incorrect date for the agreements, is stamped "NOTICE MAILED," the modified final judgment was not stamped. Rowsey contends that because the record indicates that the clerk gave notice of the first judgment,

but does not provide the same indication that notice was given of the second judgment, the alleged lack of notice of the second judgment is error apparent on the face of the record.

Failure to give notice is not reversible error in this context. The supreme court has held that "the rules do not impose on the clerk an affirmative duty to record the mailing of the required notices; accordingly, the absence of proof in the record that notice was provided does not establish error on the face of the record." *Ginn v. Forrester*, 282 S.W.3d 430, 433 (Tex. 2009) (per curiam) (citing *Alexander*, 134 S.W.3d at 849). Furthermore, Rowsey cannot demonstrate harm based on the alleged failure to send notice of the modified final judgment. *See* Tex. R. App. P. 44.1 (2). Rule 306a provides a procedure by which a party can obtain a finding that it received notice of the signing of a judgment more than twenty days but less than ninety days after it was signed, thus resetting the deadlines for post-judgment motions. *See* Tex. R. Civ. P. 306a(4), (5). In this case, it is apparent from the record that Rowsey received notice that a default judgment had been taken against her sometime before the expiration of the ninety-day period because she filed an answer and a motion for new trial thirty-one days after the judgment was signed.[5] No rule 306a motion by Rowsey appears in the record, and she does not explain how the clerk's alleged failure to send notice of the modified final judgment, which was signed the same day as the first judgment, prevented her from properly presenting her case to this Court. We overrule Rowsey's third point of error.

In her fourth point of error, Rowsey asserts that the district court erred as a matter of law by finding that there was no consideration for the agreements and that this error appears on the

---

[5] Rowsey does not assert that she did not receive notice of the first final judgment.

16

face of the record. We construe this as an argument that Matetich's petition discloses the invalidity of his claim on its face. Matetich's petition stated that the agreements showed that "while there [is] a list of things [Matetich] agrees to do, [Rowsey] does not agree to perform any act or to pay any consideration," rendering the contract unenforceable because it "lacks mutuality of obligation." Rowsey argues that the agreements, which were attached to the petition, disclose the consideration on their face because both parties agree to various obligations to do certain things. Thus, we must examine the agreements because if the pleading conflicts with the agreements, the agreements control. *See Cecil v. Hydorn*, 124 S.W.2d 781, 782 (Tex. App.—San Antonio 1987, no writ) (holding exhibit governed and pleadings did not support default judgment because attached agreement differed from agreement described in petition). Rowsey also contends that because the documents were signed contemporaneously, the consideration expressed in each agreement should apply as consideration in the other agreement. Rowsey focuses in particular on the provision in the estate agreement that "[t]he parties agree that no changes can be made to/with any assets of the estate's real property or intellectual properties without the consent of the other" as "the clearest example of consideration."

We agree with Matetich that each independent agreement must be supported by independent consideration. The general rule is that separate instruments "executed at the same time, for the same purpose, and in the course of the same transaction are to be considered as one instrument, and are to be read and construed together." *Jones v. Kelley*, 614 S.W.2d 95, 98 (Tex. 1981) (construing four documents together where primary purpose was conveyance of entire tract of land). By their terms, these agreements purport to have different purposes, and

17

each agreement purports to be the exclusive agreement regarding its topic. The estate agreement states it "constitutes all agreements made" regarding the parties' business affairs, and the personal affairs agreement states it "constitutes all agreements made" regarding their personal affairs. Accordingly, we will examine each agreement individually to determine whether it was supported by valid consideration.

Consideration is a present exchange bargained for in return for a promise. *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 496 (Tex. 1991). It can be either a benefit to the promisor or a detriment to the promisee. *Id.* The detriment must induce the making of the promise, and the promise must induce the incurring of the detriment. *Id.* Surrendering a legal right can be valid consideration. *Northern Natural Gas Co. v. Conoco, Inc.*, 986 S.W.2d 603, 607 (Tex. 1998).

In this case, both agreements are unenforceable for lack of consideration. The estate agreement primarily consists of provisions in which Matetich agrees to obligations that he would have under the probate code even if the agreement did not exist (e.g., to honor Seareatha's will and to relinquish one-half of all community property). These promises do not constitute consideration because "discharge of a legal duty is not consideration." *Martens v. Prairie Producing Co.*, 668 S.W.2d 889, 891 (Tex. App.—Houston [14th Dist.] 1984, no writ). And as Matetich points out, the provision upon which Rowsey primarily relies—the provision that states the parties' agreement not to change any of the estate's assets without consent of the other—is a meaningless provision. At the time of Seareatha's death, her property vested in her beneficiaries immediately, subject only to the payment of the debts of the testator. *See* Tex. Prob. Code Ann. § 37 (West 2003); *Woodward v. Jaster*, 933 S.W.2d 777, 780 (Tex. App.—Austin 1996, no writ). Thus, the parties

18

were not agreeing to surrender any legal right, and the exchange of promises not to do anything with the property without each other's consent is not valid consideration. The district court correctly concluded that this agreement is not supported by valid consideration.

The district court also correctly concluded the personal affairs agreement is not supported by valid consideration. There is no identifiable bargained-for exchange. It is unclear whether the promises made are to benefit Matetich or Rowsey. Instead, the agreement consists of vague statements about Matetich's and Rowsey's familial relationship and participation in family events, in terms that are not specific enough to be enforced by a court. *See T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221-22 (Tex. 1992). We overrule Rowsey's fourth point of error because Matetich's petition stated a valid cause of action on its face for a declaratory judgment that the agreements are unenforceable and fail for lack of consideration.

## CONCLUSION

Having overruled Rowsey's issues, we affirm the district court's judgment.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Waldrop

Affirmed

Filed:   August 12, 2010

19