Brian Hoyle, Justice
Because I believe that the trial court erred in excluding evidence of the prior drafts and negotiations involving COG and BSR, and because I believe that such error *99 was harmful, I concur with the majority’s decision to reverse the trial court’s judgment. Because I believe that a fact issue remains regarding under what circumstances the contract permits COG to withhold consent to a proposed assignment, I dissent from the majority’s decision to render judgment, and I instead would remand the case to the trial court for a new trial.
At its crux, the parties dispute whether COG could withhold its consent to BSR’s assignment of its interest so that COG could seek compensation from BSR for the consent. The majority concludes that the negotiations between the parties inform us that COG had an unqualified right to refuse BSR’s proposed assignment and thus could withhold consent arbitrarily. Accordingly, the majority determined as a matter of law that COG did not breach the contract. Based on the majority’s construction of the consent-to-assignment provision of the farmout agreement between the parties, the majority likewise determined that BSR could not recover under its claims of fraud and tortious interference with contract.
I disagree with the majority that the negotiations between the parties inform us that COG could withhold consent arbitrarily. The majority opinion relates the negotiations between the parties. To summarize those negotiations, (1) BSR offered a farm-out agreement with no necessity to obtain COG’s consent to an assignment, (2) COG countered with a consent-to-assignment provision in which COG agreed that consent would not be unreasonably withheld, (3) BSR countered, but made no changes to the consent-to-assignment provision, (4) COG countered with a consent-to-assignment provision that did not include specific language that consent would not be unreasonably withheld, (5) BSR objected to the change in the consent-to-assignment provision, (6) COG expressed that it would not reinsert the language that consent would not be unreasonably withheld, and (7) according to BSR, three times before BSR signed the farmout agreement, COG assured BSR that COG would consent if BSR attempted to assign the farmout. The parties then executed a farmout agreement with the following consent-to-assignment provision:
The rights provided to BSR under this Letter Agreement may not be assigned, subleased or otherwise transferred in whole or in part, without the express written consent of [COG].
Instead of informing us that COG had an unqualified right to refuse BSR’s proposed assignment and thus could withhold consent arbitrarily, I believe that the negotiations clarify that the contract requires COG’s consent to a BSR assignment but is silent as to the circumstances when COG can properly withhold consent. I agree with the majority that the trial court erred when it prohibited COG from presenting evidence of the negotiations and prior drafts of the farmout agreement. See Energen Res. MAQ, Inc. v. Dalbosco, 23 S.W.3d 551, 557 (Tex. App.-Houston [1st Dist.] 2000, pet. denied). However, I do not construe the contract as foreclosing BSR’s breach of contract claim.
We cannot use industry custom and usage to add terms specifically addressed by a written agreement of the parties. Kachina Pipeline Co. v. Lillis, 471 S.W.3d 445, 454 (Tex. 2015); but see Holmes v. Beatty, 290 S.W.3d 852, 858 (Tex. 2009). But, because I construe the contract as silent as to the circumstances when COG can properly withhold consent,[4] I believe that the trial court did not err in submitting the *100 contract claim to the jury. Further, the trial court properly allowed BSR to present evidence of the industry custom and usage on this topic, an issue not reached by the majority. See Energen Res. MAQ, Inc., 23 S.W.3d at 557. Before terms are added to a contract based on custom and usage, the custom and usage must be so general and universal in the industry that the parties are charged with knowledge of its existence to such an extent to raise a presumption that they dealt with reference to it. Va. Power Energy Mktg., Inc. v. Apache Corp., 297 S.W.3d 397, 406 (Tex. App.-Houston [14th Dist.] 2009, pet. denied).
BSR presented evidence of custom and usage through its expert witness, Bruce Kramer. Kramer possesses a wealth of experience in the oil and gas industry, albeit most of it tangentially as an oil and gas law professor and author on oil and gas law topics. Kramer specifically testified regarding the consent-to-assignment provision in the parties’ farmout agreement. Kramer explained that the parties could “use terms of art that speak for themselves but do not answer all of the questions that are raised by the use of such language in a particular oil and gas agreement.” Kramer continued that most people in the industry would read these terms of art to have a specific meaning.
Kramer contended that because the farmout agreement between the parties does not state the circumstances under which COG could withhold consent, the custom and practice of the oil and gas industry would add language to the clause that consent would be given unless COG had a concern regarding the financial status, technical expertise, or general reputation of the proposed assignee. Kramer based his opinion to add language to the consent-to-assignment provision on his study of oil and gas law as well as his discussions with people in the industry. He claimed that parties experienced in the oil and gas industry should know the language was implied because it was a basic principle in the industry. Based on the language that he added to the agreement because of custom and practice of the industry, Kramer concluded that COG breached the contract by deciding to withhold consent when BSR would not pay COG for the consent.
BSR presented other testimony from those in the industry that a party is expected to provide consent to an assignment unless the party has some concern regarding the assignee. And, Chip Johnson, the president of COG, acknowledged that nothing in the farmout agreement gives specific guidance as to the circumstances under which COG could withhold consent.
Based on the wording of the farmout agreement and the evidence presented at trial, I would hold that BSR raised a fact issue regarding whether custom and usage limited the circumstances under which COG could withhold consent to an assignment. Thus, I would not render judgment on behalf of COG as to BSR’s breach of contract claim. Because I have not interpreted the contract as the majority has, I likewise would not render judgment on behalf of COG as to BSR’s fraud and tortious interference claims.
However, neither can I affirm the trial court’s judgment. The jury sided with BSR, but the jury never saw the entire picture. The unadmitted evidence of negotiations and drafts of the agreement was especially probative of whether BSR’s claimed additional language to the consent-to-assignment provision should have been included based on custom and usage in the industry. Because the evidence was crucial to the issue, the trial court’s exclusion of the evidence was harmful error. Tex. R. App. P. 44.1; see State v. Cent. Expressway *101 Sign Assoc., 302 S.W.3d 866, 874 (Tex. 2009) (held that erroneously excluded evidence directly related to the central issue in the case generally is harmful). Accordingly, I would remand the case for a new trial.
Therefore, I respectfully concur in part and dissent in part to the majority’s opinion.

. Expert witnesses presented by both COG and BSR likewise construed the contract as silent as to the circumstances under which COG could withhold consent.